## Richmond

AMERICAN FILTRONA COMPANY and LIBERTY MUTUAL INSURANCE COMPANY

v.

SUE E. HANFORD

No. 0533-92-2

Decided March 30, 1993

160

COUNSEL

S. Vernon Priddy, III (Mary Louise Kramer; William N. Watkins; Sands, Anderson, Marks & Miller, on brief), for appellants.

Daniel E. Lynch (Williams, Butler & Pierce, on brief), for appellee.

OPINION

**BENTON, J.**—American Filtrona Company appeals from an award entered by the Workers' Compensation Commission finding American responsible for the cost of medical treatment for Sue E. Hanford's hepatitis condition. The Commission ruled that Hanford's hepatitis, contracted in 1981, was a compensable consequence of an injury by accident suffered in 1978. American contends that the Commission erred: (1) in its first review opinion when it reversed the deputy commissioner's order dismissing Hanford's claim as barred by the time limitation provided by Code § 65.1-87 (now Code § 65.2-601), and remanded the matter for an evidentiary hearing on causation; (2) in its second review opinion when it treated the issues decided in its first review opinion as final and as *res judicata*; (3) in its second review opinion when it held that payment of Hanford's hepatitis-related medical bills was the responsibility of American because American accepted Hanford's disability by execution of a supplemental memorandum of agreement dated July 7, 1987; and (4) in its second review opinion when it held that Hanford had carried her burden of proving that her hepatitis condition was causally related to her initial industrial injury. For the reasons that follow, we affirm the Commission's award.

## I.

On November 20, 1978, Hanford sustained an injury to her right knee arising out of and in the course of her employment at American. Three months later, an award was entered for the payment of compensation during her disability and for medical benefits "as long as necessary." Hanford's return to work was interrupted when she suffered various periods of disability because of recurring problems with her

knee. During the course of surgical and medical treatment for her knee injury, Hanford received blood transfusions in September 1981 and in May 1984. The record reflects that Hanford returned to work in October 1985 following a period of disability but had to leave work four months later because of problems with her knee. After a short hospitalization, she returned to work in July 1986 and an agreed statement of facts was later filed. Hanford again left her employment for medical reasons on February 4, 1987. Shortly thereafter, Hanford was diagnosed as having contracted Hepatitis C.

In June 1987, Dr. Robert L. Carithers, Jr., informed American's insurance carrier that "Hanford has chronic . . . post transfusion hepatitis which resulted from the blood transfusions received at the time of her knee injury." By letter of July 2, 1987, American's insurance carrier notified the Commission that Hanford was being paid temporary total benefits based on the occurrence of her injury. Attached to the Employer's Supplemental Report of Injury was a medical report relating her disability to hepatitis contracted during the blood transfusions. An award was entered October 1987, approving a memorandum of agreement dated July 7, 1987, for continuing disability. When American later declined to pay medical bills for treatment of Hanford's hepatitis, Hanford filed on June 19, 1990, an application for hearing. Hanford received weekly compensation benefits until September 1991.

Upon review of the evidence and briefs of the parties, the deputy commissioner dismissed Hanford's application. The deputy commissioner, in a letter opinion and order, stated that Hanford suffered a new injury when she contracted hepatitis. The order of dismissal found that Hanford's "application was filed more than eight years after the alleged new 'injury.' "

On review, the Commission reviewed the medical reports and disagreed with the deputy commissioner's finding "that the hepatitis condition was, in fact, a distinct new injury." The Commission further stated:

> The issue here is one of causation. The claimant's original award of compensation included a provision that the employer should be responsible for the cost of all necessary, i.e. related medical treatment. If the hepatitis is found to have resulted from a blood transfusion or any other medical treatment necessitated by the original industrial injury, the employer is responsible for its costs.

Such a condition is not a "new injury" such as the one involved in *Leonard v. Arnold*, [218 Va. 210, 237 S.E.2d 97 (1977)] which is relied on by the employer.

Upon these findings, the Commission reversed the deputy commissioner's order and "restored [the claim] to the hearing docket for the taking of evidence on the issue of causation."

Upon remand and following an evidentiary hearing, the deputy commissioner held "that the claimant has failed to meet her burden of showing the medical causation of her hepatitis C infection." Contrary to the remand instructions in the Commission's review opinion, the deputy commissioner made further findings, stating:

Since this case is, in all probability, headed for review, we feel that it is necessary to again address the issue of whether the transfusion of a tainted blood product constitutes a distinct new injury, as contemplated by *Leonard v. Arnold*. . . .

The deputy commissioner then concluded, "[w]ith all due respect to the full Commission, we must again state our finding that Hanford suffered a new accident on the date of her tainted blood transfusion."

The Commission reviewed the medical evidence, particularly the reports of Dr. Mitchell L. Shiffman and Dr. Carithers, and concluded that the deputy commissioner erred in finding no causal connection between the hepatitis and the treatment for the compensable injury. Based upon Dr. Shiffman's opinions, the Commission found that Hanford "contracted hepatitis as the result of one or possibly both blood transfusions in September of 1981 and May of 1984." Furthermore, the Commission held that the deputy commissioner exceeded the scope of his mandate because the "remand order was limited to the issue of causation."

## II.

■ The primary issue in this case is the application of the principle of compensable consequences.

The doctrine of compensable consequences, as the name implies, provides that "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening

cause attributable to claimant's own intentional conduct." In other words, where a causal connection between the initial compensable injury and the subsequent injury is established, the doctrine of compensable consequences extends the coverage of the Workers' Compensation Act to the subsequent injury because the subsequent injury "is treated as if it occurred in the course of and arising out of the employee's employment."

*Bartholow Drywall Co. v. Hill*, 12 Va. App. 790, 793-94, 407 S.E.2d 1, 3 (1991) (citations omitted). "The simplest application of this principle is the rule that all the medical consequences and sequelae that flow from the primary injury are compensable." 1 Arthur Larson, *The Law of Workmen's Compensation* § 13.11 (1992). "It is now uniformly held that . . . exacerbation of the claimant's condition . . . resulting from antibiotics, antitoxins, sedatives, pain killers, anesthesia, electrical treatments, or corrective or exploratory surgery" is compensable. A. Larson, *supra*, § 13.21(a) (footnotes omitted). *See also Radermecher v. FMC Corp.*, 375 N.W.2d 809, 812 (Minn. 1985) (malignant melanomas were causally related to and a compensable consequence of exposure to ultraviolet light that was used to treat dermatitis which arose out of and in the course of employment).

In response to Hanford's application for hearing, the deputy commissioner found from documents in the record that Hanford was "under an open award for total incapacity due to a right knee injury." However, the deputy commissioner reviewed the medical reports and concluded that when Hanford contracted hepatitis from a blood transfusion during the course of treatment for her knee injury she suffered a "new injury."

On review, the Commission correctly held that the deputy commissioner erred in dismissing Hanford's application. The record established that the February 26, 1979, award for temporary total disability resulting from the knee injury provided that "[m]edical benefits are awarded for as long as necessary." When Hanford was diagnosed as suffering from hepatitis resulting from blood transfusions she received in the course of treatment for her knee injury, she and American entered into a Supplemental Memorandum of Agreement and American resumed compensation. When American later denied responsibility for the costs of Hanford's medical treatment for hepatitis, the sole issue that had to be resolved was whether the medical treatment for which American refused to pay was causally related to the original injury. Applying the doctrine of compensable consequences, the Commission

aptly stated that ''[i]f the hepatitis is found to have resulted from a blood transfusion or any other medical treatment necessitated by the original industrial injury, the employer is responsible for its costs.'' We conclude that the Commission did not err in so holding and in remanding the matter to the deputy commissioner for an evidentiary hearing and determination on causation.

### III.

At the conclusion of the hearing following the remand, the deputy commissioner held that Hanford ''failed to meet her burden of showing the medical causation of her hepatitis C infection.'' In addition, the deputy commissioner determined ''that it is necessary to again address the issue of whether the transfusion of a tainted blood product constitutes a distinct new injury.'' The deputy then concluded, ''[w]ith all due respect to the full commission, . . . that Hanford suffered a new accident on the date of her tainted blood transfusion.''

■ American argues that the Commission erred when, on review of the deputy commissioner's attempt to revisit the issue that was not before him, the Commission ruled that its prior decision had precluded any further findings concerning whether Hanford suffered a ''new injury.'' Although we agree with American that principles of *res judicata*, the reason invoked by the Commission in refusing review, do not bar reconsideration of that issue, the ''law of the case'' doctrine supports the Commission's decision. ''The 'law of the case' doctrine is similar but not identical to *res judicata*.'' *Kaufman v. Kaufman*, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991).

> The [law of the case] doctrine, briefly stated, is this: Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is law. It differs from *res judicata* in that the conclusiveness of the first judgment is not dependent upon its finality. The first judgment is generally, if not universally, not final. The reason of the rule is twofold. First, after the rehearing period has passed, the appellate court has no power to change its judgment and the mandate for retrial removes the case from its jurisdiction. Second, it is necessary to the orderly and efficient administration of justice.

It would greatly increase the labor of appellate courts and the costs to litigants if questions once considered and determined could be reopened on any subsequent appeal. . . . The rule also applies where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not.

*Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 620-21, 93 S.E. 684, 687 (1917).

When the Commission ruled on review of the deputy commissioner's first order, it established the law pertaining to the issues in the case and remanded the case to the deputy commissioner with specific directions concerning the remaining issue to be developed. The Commission's order explicitly stated that ''[t]he order dismissing the employee's claim is, therefore, REVERSED and set aside and the claim restored to the hearing docket *for the taking of evidence on the issue of causation*'' (emphasis added). Despite being cognizant of the different interpretation applied by the full Commission in its review opinion, the deputy commissioner decided to disregard the remand order because he found American's ''reply brief persuasive on the issue of whether Hanford sustained a new injury by accident.'' We are persuaded that the Commission's decision, although inappropriately couched in the language of *res judicata*, was fundamentally sound as an application of the law of the case doctrine.

## IV.

Also fundamental is the rule that the Commission's findings of fact are conclusive on appeal when supported by credible evidence. *See* Code § 65.2-706. Moreover, established principles governing our review of decisions by the Commission state that ''[t]he actual determination of causation is a factual finding that will not be disturbed on appeal if . . . credible evidence . . . support[s] the finding.'' *Ingersoll-Rand Co. v. Musick*, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989). In our review of the record, we conclude that credible evidence in the form of medical reports from Dr. Carithers and Dr. Shiffman support the Commission's finding that Hanford contracted Hepatitis C from blood transfusions given to her at the time of surgery and medical treatment for her knee injury. Indeed, the record contains no evidence that Hanford was exposed to any other causative hazard for the disease.

Independent of its finding of causation, the Commission also held:

> [T]he employer is responsible for the cost of medical treatment for the hepatitis inasmuch as they have accepted the disability resulting from the hepatitis as compensable. By recognizing that a particular disability is compensable, the employer also accepts responsibility for the medical treatment made necessary by that injury.

The Commission did not err in so holding.

Accordingly, we affirm the Commission's entry of an award in favor of Hanford for the cost of medical treatment for hepatitis that she contracted during treatment for her compensable injury.

*Affirmed.*

Elder, J., and Willis, J., concurred.