MICHAEL, Circuit Judge,
dissenting:
I would dismiss this appeal because we do not have jurisdiction to hear it. Because my able colleagues have taken jurisdiction, I must also disagree with them on the substantive question. We are giving away too much by granting absolute immunity to a government contractor who is under no compulsion to report government employee misconduct. I respectfully dissent.
I.
A.
This action, which was filed in the Circuit Court of Arlington County, Virginia, included Lt. Col. James Rooney of the United States Air Force as a defendant. Pursuant to 28 U.S.C. § 2679(d)(2) the United States certified that Lt. Col. Rooney was “acting within the scope of his ... employment at the time of the incident out of which the [Mangolds’] claim arose.” The action, therefore, was deemed to be one brought against the United States. The United States removed it to federal court under § 2679(d)(2) and was substituted (by order) as a defendant in place of Lt. Col. Rooney.
Later, on January 27, 1994, a consent order dismissed the case against the United States with prejudice. Meanwhile, ANSER (the corporate defendant) and the individual defendants moved for summary judgment on the ground that the doctrine of absolute immunity barred the action against them. The district court heard this motion on January 28, 1994, the day after the United States was dismissed. At the beginning of the hearing the district court noted that with the United States dismissed, “there is no longer any basis for Federal jurisdiction.” Defense counsel nevertheless asked the court to retain jurisdiction in order to decide the immunity question. The court then heard argument on immunity and ended the hearing by saying: “If I do not grant [summary judgment to the defendants], I will be referring [the case] back to the Arlington court, because these are issues of essentially State law that are involved in the case. It’s more appropriate for them to be handled in a State court.” The court indicated that it would rule quickly.
Four days later, on February 1, 1994, the district court issued a memorandum opinion and order. First, before taking up the immunity issue, the court decided, “Without the federal defendant there is no longer any basis for federal jurisdiction because diversity does not exist among the remaining parties.” But the court said it was “retailing] jurisdiction,” at the request of the defendants, “solely for the purpose of deciding whether defendants’ actions are entitled to an absolute immunity because the allegedly defamatory statements were made within the context of an Air Force investigation.” The court next discussed immunity and decided that “the defendants are not entitled to absolute immunity.” The court then returned to the jurisdictional issue and ordered the action remanded to Virginia state court under 28 U.S.C. § 1447(c). The defendants appealed the order of February 1, 1994, and also petitioned for a writ of mandamus. We denied the mandamus petition on March 22, 1994. We should now dismiss the appeal because we have no jurisdiction to consider it.
B.
The district court’s immunity ruling is included in its remand order of February 1, 1994, and that order is before us on this appeal. The order is first and last a remand order. The district court decided the jurisdictional issue first, and only after announcing that it lacked subject matter jurisdiction did it turn to immunity. Because the ruling *1455 on immunity was incidental to the order’s essence — remand to the Virginia court — the immunity ruling was not conclusive. I do not see any way that we have jurisdiction to review the remand order or any of its discussion about immunity.
1.
Congress has denied us the jurisdiction to review remand orders: “An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise,” except in limited circumstances not relevant here. 28 U.S.C. § 1447(d). This rule has long been a part of American jurisprudence. See, e.g., Railroad Co. v. Wiswall, 90 U.S. (23 Wall.) 507, 508, 23 L.Ed. 103 (1875); Mason v. Callaway, 554 F.2d 129, 130 (4th Cir.) (per curiam), cert. denied, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977). Indeed, we have held that a district court lacks power even to reconsider its own remand order. Three J Farms, Inc. v. Alton Box Board Co., 609 F.2d 112 (4th Cir.1979), cert. denied, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). See also John Steinman, Removal, Remand, and Reviere in Pendent Claim and Pendent Party Cases, 41 Vand. L.Rev. 923, 997 nn. 349-50 (1988) (collecting cases).
The rule of non-reviewability is designed to allow cases to proceed expeditiously to the merits. In other words, we are to avoid long, technical disputes about whether cases should be in state or federal court. “Congress, by the adoption of [the rule of non-reviewability of remand orders] established the policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.” United States v. Rice, 327 U.S. 742, 751, 66 S.Ct. 835, 839, 90 L.Ed. 982 (1946). See also In re Providencia Bevel. Corp., 406 F.2d 251, 252 (1st Cir.1969) (“The action must not ricochet back and forth depending on the most recent determination of a federal court.”); Charles A. Wright, Law of Federal Courts 253-54 (1994) (“This ban on review is intended to spare litigants delay.”).
There is an exception to the rule of nonreviewability, the “Thermtron exception.” If the district court orders remand for a reason not authorized by 28 U.S.C. § 1447(c),[1] the remand order may be challenged in the court of appeals by a petition for a writ of mandamus. Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 351-52, 96 S.Ct. 584, 593-94, 46 L.Ed.2d 542 (1976) (remand order based on crowded docket was reviewable). See also Kolibash v. Comm. on Legal Ethics of W. Va. Bar, 872 F.2d 571, 573 (4th Cir.1989) (remand order “represent[ing] a discretionary decision ... not to hear a certain case on grounds of public policy” was reviewable).
The scope of the Thermtron exception is extremely narrow. See, e.g., Things Remembered, Inc. v. Petrarca, - U.S. -,-, 116 S.Ct. 494, 498, 133 L.Ed.2d 461 (1995) (Kennedy, J., concurring); Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (per curiam) (“The district court’s remand order was plainly within the bounds of § 1447(c) and hence was unreviewable by the Court of Appeals, by mandamus or otherwise.”); Volvo of Am., Corp. v. Schwarzer, 429 U.S. 1331, 97 S.Ct. 284, 50 L.Ed.2d 273 (Rehnquist, Circuit Justice 1976) (denying stay of remand order). Courts rarely invoke the Thermtron exception. See Steinman, 41 Vand.L.Rev. at 999 n. 364. (collecting cases). “As the Supreme Court has stated, when a district court remands a case on grounds contained in the statute ‘his order is not subject to challenge in the court of appeals by appeal, by mandamus, or otherwise.’ ” Washington Suburban Sanitary Comm’n v. CRS/Sirrine, Inc., 917 *1456 F.2d 834, 836 (4th Cir.1990) (quoting Thermtron, 423 U.S. at 343, 96 S.Ct. at 589). Accord Wilkins v. Royers, 581 F.2d 399, 402-03 (4th Cir.1978) (per curiam); Noel v. McCain, 538 F.2d 633, 635 (4th Cir.1976); Wright, supra at 253 n. 25 (1994).
Here, the district court said that remand was based on a statutory ground under § 1447(c), lack of subject matter jurisdiction. Near the beginning of the hearing on the defendants’ summary judgment motion, the court interrupted defense counsel and said, “there is no longer any basis for Federal jurisdiction.” At the end of the hearing, the court reiterated its belief that the case belonged in state court. Before discussing immunity in its written opinion and order, the district court expressly found that subject matter jurisdiction was lacking.[2] Finally, the district court’s order contained the magic reference to § 1447(c): “it is hereby ORDERED that this action be remanded to the Circuit Court of Aldington County in the Commonwealth of Virginia pursuant to 28 U.S.C. § 1447(c).” Because the remand order expressly rested on the statute, the Thernitron exception does not apply and this court has no power to review the district court’s order.
The majority has concluded that the district court’s invocation of § 1447(c) was simple inadvertence. But even if the district court relied on § 1447(e) erroneously, we still have no power to review the remand order. “|T]he words are indeed magic ones: the order is proof against review even if it merely ‘purports’ to remand on the ground quoted.” Richards v. Federated Dep’t Stores, Inc., 812 F.2d 211, 212 n. 1 (5th Cir.) (per curiam), cert. denied, 484 U.S. 824, 108 S.Ct. 88, 98 L.Ed.2d 50 (1987). “Under both Gruvitt and Thermtron, a remand order made pursuant to § 1447(c) cannot be reviewed if it is based on the grounds that the court lacks jurisdiction — even if the court’s jurisdictional analysis was erroneous.” Kunzi v. Pan American World Airways, Inc., 833 F.2d 1291, 1292 (9th Cir.1987). See also Briscoe v. Bell, 432 U.S. 404, 414 n. 13, 97 S.Ct. 2428, 2434, 53 L.Ed.2d 439 (1977) (“review is unavailable no matter how plain the legal error in ordering the remand”); Hansen v. Blue Cross of California, 891 F.2d 1384, 1387 (9th Cir.1989) (“Section 1447(d) precludes review of a district court’s jurisdictional decision even if it was clearly wrong.”).
2.
The majority says that the immunity ruling is reviewable under the collateral order doctrine described in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); and Jamison v. Wiley, 14 F.3d 222, 230 (4th Cir.1994). I disagree.
In Jamison v. Wiley, a remand order held reviewable by mandamus under the Therm-tron exception also contained a ruling that the defendant (a federal employee) was not entitled to have the United States substituted for him as defendant under the Westfall Act, 28 U.S.C. § 2679. We held that the substitution portion of the removal order “was appealable under Cohen because it finally and conclusively denied a claim of absolute immunity.” Jamison, 14 F.3d at 234.
The reliance on Jamison is misplaced for three reasons. First, the remand order there was not a § 1447(c) order. Instead, the district court in Jamison described its action as a discretionary remand; it did not rest on § 1447(c). Id. at 233. Here, by contrast, we have a § 1447(c) remand based expressly on the lack of subject matter jurisdiction. This leaves us without a basis for federal appellate jurisdiction. In short, the case is gone, and we have no hook with which to pull it back into federal court for any purpose, including appellate review.
Second, the immunity ruling here, unlike the substitution decision in Jamison, is within § 1447(d)’s barrier to appeal because the immunity ruling did not “precede [the] order of remand, both ‘in logic and in fact.’ ” Ja-mison at 233 (quoting Waco v. United States *1457 Fidelity & Guar. Co., 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934)). In Jamison we noted that the district court made the substitution ruling “before it decided to remand the case to state court, while it still had control of the case. That decision, which was made prior to, and is separable from, the decision to remand, is not subject to the limitations of § 1447(d).” Id. at 233 (emphasis in original). The immunity decision in the order before us can perhaps be separated conceptually from the remand decision, but the mere fact of separability is not enough under Waco. Waco is of no help because the immunity decision here was made after the district court decided to remand the case.[3] Jamison implicitly recognized that § 1447(d) prevents appellate review of collateral rulings made by a district court after its remand decision.
Third, Jamison does not permit an appeal here because the district court’s order did not “finally and conclusively [deny! a claim of absolute immunity.” See id. at 234. In Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), the Supreme Court held that an interlocutory order denying absolute immunity to a defendant about to go to trial in the district court was appealable as a collateral order under Cohen. We have observed that delaying an appeal from an order denying absolute immunity “would defeat [the defendant’s] claim that he should not be put to trial, which is the initial protection of absolute privilege.” Smith v. McDonald, 737 F.2d 427 (4th Cir.1984), aff’d, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).
The district court’s order neither “finally determined,” see Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26, nor “finally and conclusively denied a claim of absolute immunity,”' see Jamison, 14 F.3d at 234. Nor did the defendants face the imminent jeopardy of trial after the distinct court entered its remand order.
On remand the Virginia courts would quickly recognize that the district court’s immunity ruling did not have preclusive effect. See Nutter, 4 F.3d at 322 (“any issues that the district court decided incident to remand may be relitigated in state court”); McIntosh v. Atchison, T. & S.F. Ry., 19 Kan.App.2d 814, 877 P.2d 11 (1994) (ignoring federal court’s pre-remand conclusions of law). In particular, the law of the case doctrine does not bind the Virginia courts to accept the federal district court’s immunity ruling. Steinman v. Clinchfield Coal Corp., 121 Va. 611, 93 S.E. 684, 688 (1917) (“the doctrine of the ‘law of the case’ does not apply to a former decision, in unended litigation,* by a court of a foreign jurisdiction”).[4] Even if the law of the case doctrine was to apply, the Virginia courts would still have the power to revisit and redetermine the immunity question. See, e.g., Capital Investors Co. v. Executors, 584 F.2d 652, 654 (4th Cir.1978) (“the principle [of law of the case] is not absolute nor inflexible.”), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); Wilson v. Volkswagen of America, Inc., 445 F.Supp. 1368, 1370 (E.D.Va.1978) (“the law of the case doctrine ‘is not an inexorable command.’ ”) (quoting Wm. G. Roe & Co. v. Armour & Co., 414 F.2d 862, 867 (5th Cir.1969)).
The district court’s remand order does not force the defendants to trial immediately. The defendants would be free to raise the defense of immunity before the Virginia courts. Indeed, state courts regularly rule on federal immunity defenses, see e.g., Cooney v. White, 845 P.2d 353 (Wyo.), cert. denied, - U.S. -, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993), and I am confident that the Virginia courts are well equipped to deal with the issue in this case.
*1458 There is no statute, doctrine or rule that allows an appeal of the district court’s immunity ruling.
C.
It is tempting to do what the majority has done in this case, that is, step back in the quiet of appellate review and try to figure out what the district court really meant, regardless of its exact words. Until today there was at least one instance where that could not be done: where, as here, a district court ordered remand (even erroneously) using the magic words of § 1447(c), review of that order was prohibited under § 1447(d). Whatever the shortcomings of that rigid rule, it had the benefits of preventing procedural wrangling and of letting the parties know quickly and decisively whether they were going to be in state or federal court. I do not believe it is up to us to take away any of the benefits of that statutory rule.
II.
The majority’s election to reach the immunity question forces me to disagree a second time today. I disagree with the majority’s unprecedented step of granting absolute immunity to a government contractor who was not acting pursuant to any duty imposed by contract, statute or regulation. I do believe that the contractor and its employees are entitled to a First Amendment qualified privilege. But the long step from qualified to absolute immunity is a step too far.
A.
The Mangolds allege that the defendants engaged in a campaign of lies against Col. Mangold with the intent to ruin his career and that his career was ruined. The defendants say that they voluntarily responded to queries from Air Force investigators because Col. Mangold was pressuring them to hire his wife’s friend. At bottom, the defendants claim that they may complain about alleged misconduct of a government official to his superiors.
The defendants do have the important privilege to report misconduct, but the privilege is not absolute. The only privilege defendants have is grounded in the First Amendment’s Petition Clause: “the right of the people ... to petition the Government for a redress of grievances.” See McDonald v. Smith, 472 U.S. 479, 483, 105 S.Ct. 2787, 2790, 86 L.Ed.2d 384 (1985). However, the Petition Clause does not give those who complain about the conduct of government officials an absolute right to tell lies about those officials. Id.; White v. Nicholls, 44 U.S. (3 How.) 266, 11 L.Ed. 591 (1845); Bradley v. Computer Sciences Corp., 643 F.2d 1029, 1033 (4th Cir.), cert. denied, 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981). A charge of misconduct against a government official is privileged so long as the person making the charge does not act with “actual malice,” as that term is defined in First Amendment free speech/free press jurisprudence. McDonald, 472 U.S. at 484-85, 105 S.Ct. at 2790-91. See also New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26, 11 L.Ed.2d 686 (1964) (actual malice is knowing falsity or reckless disregard for whether a statement is true or false). Cf. Thorne v. Bailey, 846 F.2d 241, 245 (4th Cir.) (Petition Clause claim analyzed in accord with First Amendment free speech principles), cert. denied, 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 569 (1988).
“[TJhose who conspire intentionally to defame a federal officer in order to effect that official’s discharge” are not protected by the First Amendment and may be sued for damages. Windsor v. The Tennessean, 719 F.2d 155, 162 .(6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). This rule has long been recognized:
an individual, who maliciously, wantonly, and without probable cause, asperses the character of a public officer in a written or printed paper, delivered to those who are invested with the power of removing him from office, is responsible to the party injured in damages, although such paper is masked under the specious cover of investigating the conduct of such officer for the ■public good. Public policy demands no such sacrifice of the rights of persons in an official capacity, nor will the law endure such a mockery of its justice.
*1459 Gray v. Pentland, 2 Serg. & R. 23, 25 (Pa. 1815) (quoted in McDonald, 472 U.S. at 483-84, 105 S.Ct. at 2790-91).
In short, “[tjhe right to petition is guaranteed; the right to commit libel with impunity is not.” McDonald, 472 U.S. at 485, 105 S.Ct. at 2791. That is where I would draw the line for the private contractors in this case, because granting them absolute immunity gives them the right to tell deliberate lies without fear of civil damages.
B.
The majority concludes that absolute immunity should be extended to the private contractors here to promote the public interest of stamping out fraud, waste and mismanagement in government. This means, of course, that if Col. Mangold is correct that the defendants lied and ruined his career, he is without any remedy whatever.
I do agree that in the limited instances when private contractors are obligated to speak, they should be granted absolute immunity. If the defendants answered questions from the Air Force investigators because they had a pre-existing, contractually-defined duty to do so, then absolute immunity would be proper. Becker v. Philco Corp., 372 F.2d 771, 775 (4th Cir.) (“an utterance plainly commanded by the duties of the author to the government has been repeatedly recognized as unconditionally privileged”) (emphasis supplied), cert. denied, 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967). Similarly, if a statute or Defense Department regulations had imposed detailed reporting duties on the defendants, they should have complete immunity. See Bushman v. Seiler, 755 F.2d 653, 655 (8th Cir.1985) (Medicare providers granted absolute immunity for carrying out “administrative responsibilities that the law imposes”).[5]
These defendants, however, were under no duty to report Col. Mangold’s alleged misconduct. Their decision to talk to Air Force investigators was voluntary and was not compelled by any particular contract, regulation or statute. See Group Health Inc. v. Blue Cross Ass’n, 625 F.Supp. 69, 78-79 (S.D.N.Y.1985) (denying a claim of absolute immunity), appeal dismissed, 793 F.2d 491 (2d Cir.1986), cert. denied, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987).
When determining whether absolute immunity should be granted, courts must balance the harm to individual rights against the need to promote “effective government.” Westfall v. Erwin, 484 U.S. 292, 295-97, 108 S.Ct. 580, 583, 98 L.Ed.2d 619 (1988). Certainly, granting these defendants absolute immunity promotes effective government to some degree. Absolute immunity encourages voluntary cooperation with the government’s efforts to investigate wrongdoing by its employees. But Westfall requires a cost-benefit analysis, and the difficult question presented in this case is whether, at the margin, the benefit resulting from a move from qualified to absolute immunity outweighs the costs that move imposes on government employees who are the target of complaints. See id. at 296 n. 3, 108 S.Ct. at 583 n. 3.
Here the marginal costs are substantial. Qualified immunity limits, but does not eliminate, the rights of targeted employees. The move from qualified to absolute immunity, however, is quite a jump because absolute immunity completely extinguishes the rights even of those employees who have suffered serious wrongs. “[OJfficial immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by [someone with immunity!. Moreover, absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct.” *1460 Id. at 295, 108 S.Ct. at 583. An additional cost (or danger) of the move from qualified to absolute immunity stems from the fact that private government contractors are not subject to political control. They do not answer to the voter, nor do they answer to any official who does. There is thus no political check against the fully immunized contractor who becomes reckless or malicious in his zeal to expose a government employee. See Nu-Air Mfg. Co. v. Frank B. Hall & Co., 822 F.2d 987, 995 (11th Cir.1987), cert. denied, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). The benefit to effective government of giving additional protection to government contractors who talk voluntarily does not outweigh the harm caused by leaving government employees defenseless if they ever become the target of reckless and malicious charges.
C.
Nor can the majority’s significant expansion of immunity be justified on the ground that the defendants are entitled to a species of testimonial immunity. What happened here — statements given in an internal (nonpublic) Air Force investigation — strays too far from the core use of testimonial immunity. We give witnesses in certain judicial proceedings, such as trials, absolute immunity so they will feel free to testify fully and truthfully without fear of being sued for the words they speak under oath.[6]
The trial (or adversarial) process contains safeguards to aid in the search for truth. Most importantly, trial witnesses are subject to cross-examination. See Briscoe v. LaHue, 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983). See also Williams, 844 F.2d at 142 (presence of the “tools of the judicial process” justifies grant of absolute immunity from civil suit). A trial also is a public proceeding, and a witness is less likely to lie if he knows that his lies will be exposed to the entire world.[7]
Here, Col. Mangold had no opportunity to confront or cross-examine his accusers. With absolute immunity, there is no check against what they might have said in a shrouded, internal investigation. I realize that government investigators need the cooperation of private contractors who witness wrongdoing, but absolute immunity is too broad a brush for the delicate task of ensuring honest cooperation.
D.
A First Amendment/Petition Clause approach goes just far enough to protect the substantial public interest in bringing the misconduct of public employees or officials to light. The qualified privilege under the Petition Clause is a powerful privilege, and it is one that will adequately protect those who cooperate honestly with government investigations. Even if a whistleblower is “motivated by financial self-interest, and [is] aware of and pleased by the prospect of injury resulting to the official complained of,” the accused employee may not recover damages absent proof by clear and convincing evidence that his accusers made statements that were knowingly or recklessly false. Bradley, 643 F.2d at 1033. Accord Stern, 547 F.2d at 1329.
*1461 Again, I recognize the importance of ferreting out wrongdoing by public officials and employees. My point is that false and malicious charges of wrongdoing can be made. For those instances I would like to leave the victim some protection. There is no protection when the accuser in an internal investigation is given absolute immunity. I respectfully dissent because I think qualified immunity is sufficient.

. By contrast, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1987), and In re Surinam Ainvays Holding Co., 974 F.2d 1255, 1257 (11th Cir.1992), upon which the majority relies, did not involve remand orders justified on the ground that jurisdiction was lacking. Thus, in those cases the district courts did not invoke § 1447(c).

. The Waco doctrine also docs not apply because (as I discuss below) the district court's immunity ruling would not bind the Virginia courts. "City of Waco focused on the need to provide appellate review of findings that are conclusive on the rights of the parties.” Nutter v. Monongahela Power Co., 4 F.3d 319, 321 (4th Cir.1993) (emphasis supplied).

. Although Steinman's validity has been questioned, Timms v. Rosenblum, 713 F.Supp. 948, 954 n. 13 (E.D.Va.1989), aff'd, 900 F.2d 256 (4th Cir. 1990), no Virginia court has given any sign that Steinman would not be followed. Indeed, the case was cited as good law as recently as 1993. American Filtrona Co. v. Hanford, 16 Va. App. 159, 428 S.E.2d 511, 514(1993).

. The majority’s citation to Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), is not apposite. Boyle provides that a defense contractor may not be held liable for certain kinds of products liability claims if “(1) the United States approved reasonably precise specifications" for the equipment produced and sold to the government, "(2) the equipment conformed to those specifications, and (3) the supplier warned the United States about the dangers” of using the equipment. Id. at512, 108 S.Ct. at 2518. The scope of the Boyle privilege is extremely narrow and has no relevance here. See id. at 505 n. 1, 108 S.Ct. at 2515, n. 1.

. Holmes v. Eddy, 341 F.2d 477 (4th Cir.) (per curiam), cert. denied, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149 (1965), cited by the majority, is best understood as a judicial proceedings immunity case. There the defendant assisted the Securities and Exchange Commission in the prosecution of an ongoing civil action.

. Indeed, some courts have refused to grant absolute immunity for statements made during judicial proceedings lacking the truth-promoting safeguards of trial in open court. See Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (police officer not entitled to absolute immunity for false statements made in warrant application); Anthony v. Baker, 955 F.2d 1395, 1400-01 (10th Cir.1992) (not all grand jury testimony is absolutely privileged); Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254, 261 (absolute immunity denied for statements made during pretrial hearing), modified on other grounds, 744 F.2d 1131 (5th Cir.1984); Cox v. County of Suffolk, 780 F.Supp. 103, 108 (E.D.N.Y.1991) (not all grand jury testimony is absolutely privileged); White v. Frank, 680 F.Supp. 629, 638 (S.D.N.Y.) (same), appeal dismissed, 855 F.2d 956 (2d Cir.1988). But see Strength v. Hubert, 854 F.2d 421, 423-24 & n. 2 (11th Cir.1988) (granting absolute immunity from civil suit to grand jury witness); Kincaid v. Eberle, 712 F.2d 1023 (7th Cir.) (per curiam) (same), cert. denied, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983).