COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,* Judge Elder and
          Senior Judge Duff
Argued at Alexandria, Virginia


CARPET PALACE, INC. AND NATIONWIDE
 MUTUAL INSURANCE COMPANY
                                        OPINION BY
v.   Record No. 0706-97-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JANUARY 20, 1998
PAUL L. SALEHI


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Benjamin J. Trichilo (Trichilo, Bancroft,
        McGavin, Horvath & Judkins, on brief), for
        appellants.

        No brief or argument for appellee.


     Carpet Palace, Inc. and Nationwide Mutual Insurance Company

(collectively "employer") appeal the Workers' Compensation

Commission's decision awarding benefits to Paul L. Salehi

("claimant").  Employer argues the commission erroneously

concluded that:  (1) claimant's back injury was compensable

despite his repeated failure to comply with lifting restrictions;

and (2) claimant adequately marketed his residual work capacity.

 For the following reasons, we reverse the commission's decision.

                              I.

     "[W]e review the evidence in the light most favorable to the

prevailing party."  R.G. Moore Bldg. Corp. v. Mullins, 10 Va.

App. 211, 212, 390 S.E.2d 788, 788 (1990).  "Factual findings of

_____

        *On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

the . . . [c]ommission will be upheld on appeal if supported by credible evidence."  James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Claimant has been the owner and president of Carpet Palace, Inc. since 1976.  On November 14, 1977, he lifted a heavy roll of carpeting and suffered a compensable back injury, which ultimately resulted in a settlement of $20,000 plus lifetime medical benefits.  From 1977 through 1993, claimant sought medical treatment on eight occasions for back pain following heavy lifting at work.  He was hospitalized at least four times for treatment of his back pain, and doctors performed at least two surgical procedures.  After the first surgery in 1979, claimant's doctors imposed restrictions on repetitive bending and lifting over twenty-five pounds.

On October 3, 1994, claimant moved a "large box of carpet samples" and immediately felt pain in his back and into his right leg.  In response to questions about this incident, claimant acknowledged the restrictions:

> Q.   Did you have restrictions on your activities prior to October of 1994?
> A.   Yes, I was told, you know, not to lift more than 20, 25 pounds, Sir.
> Q.   So you weren't following your doctor's advice on the day of this incident?
> A.   It says try not to lift more than 20, 25 and unfortunately I did that.

When asked about his history of back pain following heavy lifting, claimant explained:  "Unfortunately I do the same thing expecting different results."  Claimant's primary work

2

obligations were bill paying and administrative jobs.  Lifting boxes was outside the scope of his normal duties.

Dr. Anthony Debs, the treating physician, opined that the October 3, 1994 incident "aggravated a pre-existing condition." Dr. Debs also expressed his view that "at this stage the persevering symptoms are most probably related to the chronic condition that he has been suffering from for the past 15-16 years."  Although Dr. Debs told claimant he could work eight hours per day, claimant indicated that working more than four to six hours a day aggravated his back.  As a result, claimant testified that he was unable to work full duty and had to hire another employee to perform part of his work.  Thus, his income was decreased.

On March 8, 1995, claimant was involved in an automobile accident.  He sought treatment for back pain from Dr. G.R. Mahryar, and he failed to tell Dr. Debs about this incident.

On April 3, 1995, claimant filed his request for benefits related to the October 3, 1994 incident.  After a hearing, the deputy commissioner found that because Dr. Debs was unaware of the car accident, "Dr. Debs' finding of disability is based upon inaccurate and incomplete information provided to him by the claimant."  He concluded "the claimant has failed to sustain his burden of proof that any disability after the claimant's March 8, 1995 motor vehicle accident was causally related to the claimant's compensable accident or aggravation of his

3

pre-existing condition." The deputy commissioner awarded claimant medical benefits related to the incident, temporary total disability benefits beginning October 28 through December 4, 1994, and temporary partial disability benefits from December 5, 1994 through March 7, 1995. Claimant did not contest termination of disability benefits as of March 7, 1995.

On review, a majority of the commission affirmed the award, finding: (1) "claimant sustained a compensable injury by accident on October 3, 1994," (2) "claimant adequately marketed his residual capacity," and (3) "employer continues to be responsible for medical treatment which is proven to be causally related to the industrial accident."

## II.

Employer argues that claimant did not sustain a compensable injury by accident because his injury predictably resulted from his failure to comply with ongoing medical restrictions. We agree.

A worker may receive benefits related to an "injury by accident arising out of and in the course of the employment." Code § 65.2-101. However, "[a]n injury by accident must be unexpected to be compensable." Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 178, 468 S.E.2d 152, 155 (1996) (shoulder injury was not expected result of deviation from restriction related to breast cancer surgery). "The basic and indispensable ingredient of 'accident' is unexpectedness." 2 Arthur Larson, Workers'

4

Compensation Law § 37.20 (1997). "The definition of accident generally assented to is . . . an event which, under the circumstances, is unusual and not expected by the person to whom it happens." Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 570-71, 159 S.E.2d 633, 635 (1968) (citation omitted) (knee injury during door-to-door survey was unexpected). Cf. L.B. Priester & Son v. McGee, 106 So.2d 394, 398 (Miss. 1958) (claimant's "expectation of a probable second heart attack [was not] so strong as to strip the occurrence of its accidental character").

Additionally, "[a]n accident is an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271, 16 S.E.2d 646, 648 (1941) (citation omitted) (toe ulceration from work shoe and resultant foot amputation were unexpected). Although "few people intentionally persist in a line of conduct that expectedly results in personal injury . . . such cases can be found." Larson, supra § 38.83(f). See Capers v. Flautt, 407 S.E.2d 660, 662 (S.C. Ct. App. 1991) (claimant's contact dermatitis was "an event which [claimant] could anticipate given his past experience" and was not a compensable injury by accident); Ernest Waters Constr. Co. v. Mills, 51 So.2d 180, 181 (Fla. 1951) (claimant's dermatitis was not compensable where it was "activated [three times] by neglect on his part to obey his

5

doctor's instructions").

In the instant case, claimant testified that he expected he would not hurt his back when he lifted the heavy box of carpet samples on October 3, 1994. However, on at least eight prior occasions, claimant had required treatment for back pain after lifting heavy items at work. Despite his experience, he did "the same thing expecting different results." Additionally, claimant knew that his doctor had restricted him from lifting more than twenty-five pounds, and he knew that the lifting restriction was intended to prevent exactly the type of injury that occurred. He chose to ignore his doctor's orders and lifted a heavy box. The resultant back injury was a predictable consequence of claimant's voluntary defiance of the lifting restriction.

The Workers' Compensation Act does not contemplate benefits for injuries voluntarily inflicted. Claimant's injury was the expected result of an activity that violated the doctor's specific restrictions and does not constitute an injury by accident.[1] For this reason we hold that claimant's October 3,

_____

[1]The Workers' Compensation Commission has denied compensation to workers whose disregard of medical restrictions resulted in predictable injuries. "[C]laimant should have reasonably anticipated the result that her strenuous work would cause. We conclude that her [back] injury is the result of that work, which was done in specific violation of restrictions placed upon her by her doctor. . . . [C]laimant incurred no injury by accident." Taylor v. Independent Home Health Care, File No. 1701061 (Workers' Comp. Comm'n Oct. 13, 1995). Accord Ellis v. City of Norfolk, 68 O.I.C. 47, 52 (1989) (claimant ignored doctor's post-hospitalization orders and "should have reasonably anticipated the result . . . . As a consequence, [his] application must be . . . denied"); Miller v. Dixon Lumber Co., 67 O.I.C. 71, 74 (1988) ("claimant returned to a type of work

6

1994 back injury was not compensable, and we reverse the commission's award.[2]

Reversed.

---

which the attending psychiatrist had advised him not to do and . . . he predictably experienced an aggravation of his post-traumatic stress disorder. . . . [S]ince this was the expected result of the employee's activity . . . the incident is not accidental in nature"); Bragg v. Buchanan Gen. Hosp., 59 O.I.C. 30, 32-33 (1980) (claimant "chose to ignore" doctors' instructions to stay off her leg, and she "clearly did not sustain an accidental injury . . . since the results of the activity engaged in were the expected results of that activity"); Dobbins v. Contractors Equip. & Supply Co., 58 O.I.C. 104, 106 (1979) ("the resulting [back] strain was the expected result of the activity engaged in and as such did not constitute an injury by accident as that term is defined in the compensation law"). See also Brewer v. Westmoreland Coal Co., 70 O.I.C. 112 (1991) (doctor's suggestion that claimant seek employment outside the coal mine area was not a medical order, and claimant's back injury was not a predictable result of claimant's continued employment in a coal mine).

[2]Because we reverse on the issue of injury by accident, we do not reach employer's additional arguments.