COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Huff and Senior Judge Coleman
Argued at Richmond, Virginia


CHRISTINE A. REID

MEMORANDUM OPINION[*] BY

v.      Record No. 0478-13-2                     JUDGE GLEN A. HUFF
OCTOBER 22, 2013

VIRGINIA COMMONWEALTH UNIVERSITY/
 COMMONWEALTH OF VIRGINIA


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Christine Reid, *pro se*.

Adam L. Katz, Assistant Attorney General (Kenneth T. Cuccinelli, II,
Attorney General; Wesley G. Russell, Jr., Deputy Attorney General;
Peter R. Messitt, Senior Assistant Attorney General, on brief), for
appellee.


Christine A. Reid ("employee") appeals the decision of the Virginia Workers'

Compensation Commission ("the commission") affirming the deputy commissioner's finding

that employee's neck and left shoulder injuries were not compensable consequences of her

March 23, 2011 right shoulder injury.  On appeal, employee contends that the commission erred

in

> 1) focusing solely on the doctrine of compensable consequences
> after a May 4, 2011 injury exacerbation, ignoring evidence from
> [employee's] testimony;
>
> 2) stating that the May 4, 2011 physical therapy session was not
> causally related, reasonable, and necessary medical treatment for
> her compensable right shoulder injury by accident on March 23,
> 2011, despite the preponderance of the evidence that physical
> therapy was necessary and appropriate for this injury;

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

3) substituting the uncorroborated opinion of one orthopedic surgeon (Dr. Boardman) about whether . . . the originally prescribed course of physical therapy should be followed, in place of the Commission's own determination of whether . . . an injury experienced during physical therapy for compensable accident injury follows the doctrine of compensable consequences; and

4) ignoring that instruction in a home exercise program is an appropriate conclusion to a physical therapy program, regardless of whether . . . an orthopedic surgeon says he thinks that no additional physical therapy is needed.

For the following reasons, this Court affirms the decision of the commission.

## I. BACKGROUND

On appeals from the commission, "we review the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). If supported by credible evidence, the commission's factual findings are "binding on appeal," Tomes v. James City Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002), "even though there is evidence in the record to support a contrary finding," Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). When "determining whether credible evidence exists," we cannot "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). Any medical opinion offered into evidence "is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). So viewed, the evidence is as follows.

On March 23, 2011, employee, a professor in the Department of Rehabilitation Counseling for the Virginia Commonwealth University ("employer"), was attending a conference in New Orleans, Louisiana. While at the conference, employee tripped on a broken sidewalk, fell, and dislocated her right shoulder. Employee was treated at the Ochsner Baptist Medical Center in New Orleans and was released the same day. The next day, employee noticed neck and left shoulder pain that she attributed to overuse from having her right arm in a sling following the accident.

After returning to Richmond, employee began treatment with Dr. Frank J. Tortorella ("Tortorella"), the head of Employer's Employee Health Services. Tortorella referred employee to Dr. Norman D. Boardman, III ("Boardman"), an orthopedic specialist, who prescribed physical therapy for employee. Beginning on April 8, 2011 and continuing through May 2, 2011, employee attended physical therapy for her injury. On May 3, 2011, employee returned to Boardman for a visit. Boardman stated the following in his final report from that visit:

> OBJECTIVE: On examination her shoulder looks great. Full motion. 5/5 strength throughout. Fingers pink, warm and sensate, good capillary refill. No gross motor or sensory deficits.

> ASSESSMENT/PLAN: She is doing well. At this point I do not even think she needs therapy. She will gradually increase activity as tolerated and follow up on an as needed basis.

Boardman then signed a physical therapy referral form on May 3, 2011 that further provided "no therapy → This has been D/C'd."

In contravention of Boardman's conclusion, employee attended her physical therapy session the next day because she disagreed with Boardman and her "plan was to get the physical therapist's perspective and then talk to . . . Tortorella[,] the [w]orker's [c]omp physician who is responsible for coordinating care." Employee also claimed that she applied her professional "knowledge to my own case as I decided to keep the physical therapy appointment for the day

after I met with . . . Boardman." Specifically, employee testified that "[i]t was a good idea for [her] to go [to the appointment] given that . . . Boardman and I disagreed about the need for . . . further physical therapy, and therefore I wanted to gather further information to discuss with . . . Tortorella who is the one responsible for coordination of care." Employee also stated that she attended the appointment because she believed she would have been charged if she did not attend.

At the physical therapy session, employee worked with the therapist on a home exercise program "given that . . . Boardman said that he didn't think additional physical therapy was necessary . . . ." Employee started doing some of the exercises with the Thera-Band when she "felt a snap in [her] neck accompanied by intense pain, pain on the left side with the inability to turn to the right."

On May 12, 2011, Dr. Boardman noted in his follow-up visit notes that

> [a]pparently [employee] was using some type of Thera-Band or the equivalent in physical therapy last week, even though I thought we discontinued her therapy and had acute snapping in the neck. This was not in the shoulder. She had left-sided neck pain, radiating pain down the break. She denies numbness and tingling, just really neck pain. She does not feel there is inherently pain in the shoulder. She noticed some difficulty now lifting the shoulder. She considers the source of this to be the neck. She had acute onset of a loss of range of motion of the neck as well which is improved somewhat, apparently with a couple of chiropractic visits.

On May 12, 2011, employee filed an accident report stating that she was "[e]ngaged in physical therapy prescribed for [the] 3/23/11 fall. In midst of physical therapy, I felt a pain [and] 'snap' in my neck." She went further stating that the cause and object of the injury was as follows: "Original injury caused by fall on broken sidewalk. At the time, focus on dislocated right shoulder, but neck pain and left shoulder pain were noted."

- 4 -

On June 24, 2011, Managed Care Innovations, L.L.C., the workers' compensation insurance carrier, sent a letter to employee indicating that they could not pay benefits for her injury claim for the May 4, 2011 accident. The letter further indicated,

> [b]ased on the information obtained through our investigation we are unable to confirm that you sustained an injury by accident because your injury on May 4, 2011, occurred while attending a physical therapy appointment related to your March 23, 2011, injury. Therefore, your claim is not compensable, according to section 65.2-101, of the Virginia Workers' Compensation Act.

On July 7, 2011, employee filed a claim for benefits asserting that she exacerbated her injuries on May 4, 2011. The deputy commissioner held a hearing on November 9, 2011, and issued his opinion on January 17, 2012. The deputy commissioner found that employee's "May 4, 2011 injuries are not compensable consequence injuries because the medical evidence . . . indicates that the physical therapy on May 4, 2011 was not necessary medical treatment causally related to the compensable accident."

On February 15, 2013, the commission affirmed the deputy commissioner's holding. The commission specifically found the following:

> 1. Based upon the uncontradicted evidence in the file, we find that [employee] suffered neck and left shoulder pain after performing an exercise at her May 4, 2011 physical therapy appointment.
>
> 2. Based upon [employee's] testimony, we find that, although she understood that Dr. Douglas Boardman, her treating orthopedic surgeon, had discontinued her physical therapy prescription that had been prescribed to treat her compensable shoulder injury on May 3, 2011, [employee] attended the May 4, 2011 physical therapy appointment on her own volition.
>
> 3. Based upon [employee's] testimony and the May 3, 2011 record of Dr. Boardman, indicating that [employee] was no longer to have therapy for her compensable right shoulder dislocation, we find that the May 4, 2011 physical therapy session was no longer causally related, reasonable and necessary medical treatment for her compensable injury by accident on March 23, 2011.

> \* \* \* \* \* \* \*

- 5 -

5. We find that [employee's] neck and left shoulder injuries suffered during the May 4, 2011 physical therapy appointment, an appointment subsequent to Dr. Boardman's note discontinuing [employee's] physical therapy treatment for her compensable right shoulder injury, are not a direct result of the March 23, 2011 compensable accident; thus, these injuries are not compensable consequences of her compensable injury by accident.

Commissioner Marshall dissented, asserting that employee injured herself on May 4, 2011 while receiving instructions on a home exercise program and that Dr. Boardman had not indicated whether employee needed such instructions.

This appeal followed.

## II. ANALYSIS

### A. Procedurally Defaulted Assignments of Error

Employee argues the commission erred in 1) focusing on the doctrine of compensable consequences; 2) relying exclusively on the medical reports from Boardman, which employee alleges are not credible; and 3) holding the home exercise program was not reasonable and medically necessary. Employee, however, fails to cite any principles of law or authority to support these arguments.

Rule 5A:20(e) provides that "[t]he opening brief of appellant shall contain . . . [t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error do not merit appellate consideration." Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865 (2008) (citation omitted). "'[W]hen a party's failure to strictly adhere to the requirements of Rule 5A:20(e) is significant, the Court of Appeals may . . . treat a[n assignment of error] as waived.'" Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (quoting Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008)).

Employee failed to provide any legal argument or authority relevant to these three assignments of error. Although employee has represented herself well as a *pro se* litigant before this Court, she "is no less bound by the rules of procedure and substantive law than a [litigant] represented by counsel." Townes v. Commonwealth, 234 Va. 307, 319, 362 S.E.2d 650, 657 (1987); see also Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999) ("Even *pro se* litigants must comply with the rules of court."). Because this deficiency is significant, she has waived her right to have these assignments of error reviewed by this Court.

### B. Compensable Consequences of the March 23 Injury

Employee argues the commission erred in denying her medical benefits for her May 4 injuries because the evidence establishes the causal link between those injuries and her compensable March 23 injury. Specifically, she contends the home exercise program was a natural result of "a complicated shoulder dislocation injury." Further, employee avers that Tortorella had the ultimate authority to determine the course of her treatment. Therefore, according to employee, Tortorella required input from her physical therapist, and the commission erred in discounting the need for the May 4 physical therapy session.

Under the doctrine of compensable consequences, "[w]hen a primary injury under the Work[ers'] Compensation Act is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary injury." Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977). "'It is now uniformly held that . . . exacerbation of the [employee's] condition . . . resulting from . . . corrective or exploratory surgery' is compensable." American Filtrona Co. v. Hanford, 16 Va. App. 159, 163, 428 S.E.2d 511, 513 (1993) (quoting 1 Arthur Larson, The Law of Workmen's Compensation § 13.21(a) (1992)); see, e.g., Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 189, 480 S.E.2d 788, 791-92 (1997) (affirming the commission's award of

- 7 -

benefits where the evidence proved that Wagoner's hip degradation was caused by a procedure to treat his compensable back injury); Hanford, 16 Va. App. at 164, 428 S.E.2d at 514 (affirming the commission's award for benefits where Hanford's hepatitis resulted "from a blood transfusion . . . necessitated by the original industrial injury"). If the second injury, however, "is the result of an independent intervening cause attributable to [employee's] own intentional conduct," that injury is not compensable. Morris, 3 Va. App. at 283, 348 S.E.2d at 879 (citation omitted). For example, an injury that "was the expected result of an activity that violated the doctor's specific restrictions . . . does not constitute an injury by accident." Carpet Palace v. Salehi, 26 Va. App. 357, 362, 494 S.E.2d 870, 872-73 (1998).

"The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence." Wagoner, 24 Va. App. at 188, 480 S.E.2d at 791. "A determination by the [c]ommission upon conflicting facts as to causal relationship is conclusive and binding on appeal, absent fraud, when such finding is supported by competent, credible evidence." Watkins, 225 Va. at 101, 300 S.E.2d at 763.

In the present case, the commission properly denied medical benefits relating to employee's May 4 injuries. After employee sustained a compensable injury to her right shoulder on March 23, 2011, Boardman prescribed physical therapy, which employee attended from April 8 through May 2, 2011. When employee returned to Boardman on May 3, 2001, however, Boardman noted employee "is doing well" and discontinued the physical therapy.

Despite understanding Boardman's opinion that she did not require additional physical therapy, employee attended her May 4, 2011 physical therapy appointment, of her own volition, because she disagreed with Boardman. The commission concluded that because employee suffered neck and left shoulder injuries during this May 4 appointment, after understanding the

therapy had been discontinued, the injuries were not a direct result of the March 23 compensable accident.

The commission further found that Boardman's medical opinion instructed employee that she did not need further physical therapy. Although the record contains several medical reports that prescribe home exercise programs, "questions raised by conflicting medical opinions will be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). Thus, although nothing prevented employee from attending the appointment to seek information and input from her physical therapist, she was well aware of her attending physician's instructions that additional physical therapy was not necessary. In fact, employee acknowledged that she intended to seek approval from her physical therapist, contrary to the opinion of her treating physician. This evidence supports the commission's finding that she attended the appointment on her own volition and her resulting injuries were "'attributable to [employee's] own intentional conduct.'" Farmington Cntry. Club, Inc. v. Marshall, 47 Va. App. 15, 22, 622 S.E.2d 233, 237 (2005) (quoting Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994)).

Employee may have believed that additional physical therapy was required to strengthen her shoulder, but without approval from her attending physician, the treatment was not medically necessary, and she underwent such self-remedy at her own risk. Employee's seeking and performing unauthorized medical treatment constitutes a break in the causal relationship between her compensable injury and her subsequent May 4 injuries such that the latter is not a compensable consequence.

## III.  CONCLUSION

Because the commission did not err in finding that continued physical therapy was no longer medically necessary, the denial of benefits is therefore affirmed.

<u>Affirmed.</u>