COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Frank
Argued at Salem, Virginia


AUGUSTA (COUNTY OF) SCHOOL BOARD AND
 HARTFORD UNDERWRITERS INSURANCE COMPANY

                                         MEMORANDUM OPINION[*] BY
v.    Record No. 2304-99-3              JUDGE ROBERT P. FRANK
                                            AUGUST 15, 2000
ANNIE L. WARREN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Roger L. Williams (John T. Cornett, Jr.;
            Williams, Lynch & Whitt, on brief), for
            appellants.

            Howard A. Herzog for appellee.


     Augusta (County of) School Board (employer) appeals the

September 9, 1999 decision of the Workers' Compensation

Commission (commission) awarding benefits to Annie L. Warren

(claimant).  On appeal, employer contends:  1) the commission

erred in finding claimant suffered a compensable change in

condition with regard to her compensable September 10, 1997 back

injury and that her medical treatment and disability were

causally related to the compensable injury, 2) the commission

erred in finding claimant was totally disabled from May 5, 1998,

and 3) assuming claimant was partially disabled, she did not

---

        [*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

market her residual earning capacity.  We affirm the commission's award of benefits.

## I.  BACKGROUND

Claimant was employed by employer on September 10, 1997, when she suffered a back injury during her employment as a cafeteria worker.  Employer does not contest the compensability of the September 10, 1997 injury.  As a result of the September 10, 1997 injury, claimant was treated by Dr. Alan Richardson and Dr. Elizabeth Kautz.  Claimant's injury was diagnosed as "acute sacroiliac sprain/strain" by Dr. Kautz on September 18, 1997.  Claimant returned to light duty employment on October 7, 1997, with restrictions on lifting.  Gradually, claimant's condition improved and she was able to perform her pre-injury duties without restriction.

In April 1998, due to an increase in her duties at work, she began to experience aching in her back, which eventually resulted in severe pains in her legs and pulsating back pain.  Claimant returned to Dr. Richardson on May 5, 1998, who diagnosed her with lumbar strain and wrote that she was "unable to work until recheck."  He also referred her to Dr. Kautz.

On May 19, 1998, and June 16, 1998, claimant returned to Dr. Richardson, who, on both occasions, wrote that she could not work until she was rechecked.  On July 16, 1998, Dr. Kautz wrote that claimant's condition, which she related to the injury in September 1997, was "exacerbation of sacroiliac sprain resulting

-

in moderate to severe sacrodynia." Dr. Kautz wrote that claimant would have a permanent defect and diagnosed claimant with "L5-S1 Grade 2 Spondylolisthesis." Further, Dr. Kautz stated that the dates when claimant could return to light work and regular work were "unknown." On July 23, 1998, Dr. Kautz wrote that although degeneration had been noted earlier, there was no evidence of spondylolisthesis on the x-rays taken in September 1997. Further, Dr. Kautz opined that the lifting strain from claimant's duties at work caused the spondylolisthesis to develop. Dr. Kautz recommended that claimant not return to work at "her job in the school cafeteria."

On July 28, 1998, Dr. Richardson diagnosed claimant with "spondylolisthesis secondary to work related injury 9/97." He also wrote claimant could not return to work and was permanently disabled. On August 18, 1998, September 22, 1998, and October 20, 1998, Dr. Richardson wrote that claimant was "permanently disabled." On November 23, 1998, he wrote that she was "unable to work-permanently disabled." On January 12, 1999, he wrote that she was "unable to work." On March 18, 1999, Dr. Richardson wrote that he saw claimant on May 5, 1998, for a complication of her initial injury. He wrote that she was found to have spondylolisthesis from lifting strain at work. He further stated that he removed her from work on May 5, 1998, and she was "permanently disabled from her job." In an employee

-

status report, also dated March 18, 1999, Dr. Richardson wrote that claimant was "unable to work."

## II.  ANALYSIS

> [T]he Commission's findings of fact are conclusive on appeal when supported by credible evidence.  <u>See</u> Code § 65.2-706. Moreover, established principles governing our review of decisions by the Commission state that "[t]he actual determination of causation is a factual finding that will not be disturbed on appeal if . . . credible evidence . . . support[s] the finding." <u>Ingersoll-Rand Co. v. Musick</u>, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

<u>American Filtrona Co. v. Hanford</u>, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993).

In this case, there was medical evidence from Dr. Kautz and Dr. Richardson relating the cause of claimant's disability and medical treatment to her September 1997 injury.  Therefore, we are bound by the commission's determination as to causation.

Both of the issues in employer's first assignment of error, change in condition and causation, are resolved by our determination that claimant's disability and medical treatment were causally-related to the September 1997 injury.

Further, there was evidence from Dr. Kautz and Dr. Richardson to support the commission's finding that claimant is permanently disabled.  We, therefore, affirm the finding of the commission as to the permanence of claimant's disability.

We do not reach employer's third assignment of error because the evidence supports the commission's finding of total

-

disability, thus, no basis exists for asserting that claimant was required to market a residual earning capacity.

For the reasons set forth in the commission's opinion, we affirm the award of benefits to claimant.

Affirmed.

-