**Salem**

THE GREIF COMPANIES (GENESCO)

and

ST. PAUL FIRE & MARINE INSURANCE COMPANY

v.

SHIRLEY A. SIPE

No. 1451-92-3

Decided July 6, 1993

COUNSEL

Joseph C. Veith, III (Montedonico, Hamilton & Altman, P.C., on briefs), for appellants.

Frankie C. Coyner, for appellee.

OPINION

**COLEMAN, J.**—Greif Companies contends that the Workers' Compensation Commission erred by reviewing an issue decided by the deputy commissioner for which neither party had requested review. Specifically, Greif asserts that because Shirley Sipe did not request review of the deputy's ruling that she had not suffered a compensable ordinary disease of life, the commission erred by awarding her benefits on that basis. Greif further contends that even if the issue was properly considered, the commission erred by finding the evidence sufficient to prove a compensable ordinary disease of life. Finally, Greif argues that the commission erred in finding that Sipe made a reasonable effort to market her remaining work capacity. For the reasons that follow, we affirm the commission's decisions.

Sipe was employed by Greif for twenty-four years as a seamstress. Her daily work involved repetitive use of both wrists, flexing them inward and using scissors to snip material and thread, while making 425 to 450 jacket sleeves per day. Over the years, Sipe sought medical treatment for complaints involving the lower back, shoulder and neck pain, as well as pain in her wrists. In 1982, she experienced numbness in the right hand and, in 1984, underwent a carpal tunnel release to alleviate the condition. She underwent a second carpal tunnel release in May, 1989, after developing similar symptoms in her left hand. In October, 1989, a doctor diagnosed Sipe as having extensor tendinitis in the right wrist. Sipe also developed epicondylitis, which was treated and resolved during the months of May through August, 1990.

Several months later, Sipe sought treatment from Dr. Kenneth A. Boatwright for right wrist pain. Dr. Boatwright concluded that Sipe had tenosynovitis in both wrists, and he attributed the condition to her repetitive work activity. He also noted that Sipe had a family history of rheumatoid arthritis, but he did not conclude from the family history that her tenosynovitis was the result of a hereditary condition. Dr. Boatwright performed surgery on Sipe's right wrist in February, 1991, to treat the tenosynovitis. Sipe did not return to work until June 2, 1991, when she was restricted to light duty. Sometime thereafter, Sipe again began experiencing numbness and swelling in her wrists. On September 5, Greif terminated Sipe's employment. Sipe attempted without success to find suitable light duty employment. She contacted three prospective employers per week, the minimum number required by the Virginia Employment Commission in order to receive unemployment benefits. Most of the employers that Sipe contacted did not have job openings.

Sipe filed for workers' compensation benefits from Greif, alleging that the tendinitis is either an occupational disease under Code § 65.2-400 or a compensable ordinary disease of life under Code § 65.2-401. The deputy commissioner ruled that Sipe had failed to prove that her tendinitis was a compensable ordinary disease of life, which required a higher degree of proof as to causation; however, he found that she had proven that the tendinitis was compensable as an occupational disease. He also found that she had made a reasonable effort to market her remaining work capacity and awarded her total disability for the period from February 15 through June 2, 1991, and from September 5, 1991, and continuing.

Greif sought review of the deputy commissioner's ruling that claimant proved an occupational disease. In its request for review, Greif argued that Sipe's tendinitis is a noncompensable ordinary disease of life. Although no review was requested of the deputy's finding that Sipe failed to prove a compensable ordinary disease of life, the commission upheld the deputy's award of benefits, but based its award on a finding that Sipe's tendinitis was a compensable ordinary disease of life rather than an occupational disease. The commission also affirmed the deputy commissioner's finding that Sipe made a reasonable effort to market her remaining work capacity and affirmed the award of benefits. Greif appeals this decision.

## I.

The commission did not err by considering whether Sipe had proven a compensable ordinary disease of life, even though neither party had requested review of the deputy's ruling on that issue. Rule 2(A) of the Rules of the Workers' Compensation Commission provides that an application for review of a decision by the deputy commissioner must be in writing, must be filed within twenty days of the date of the decision, and "should specify each determination of fact or law to which exception is taken."

Rule 2(A) does not, as Greif contends, require that a party specify every contested issue in the application for review or that a prevailing party take exception to an adverse finding of fact or conclusion of law. Consequently, the failure of a party to specify certain issues does not deprive the commission of jurisdiction to consider issues that are necessary to a resolution of the claim. Rule 2(A) states that a request for review "should" specify each issue of law or fact. "The word 'should' . . . denotes duty or obligation, [but] implies no more than expediency." *Brushy Ridge Coal Co. v. Blevins*, 6 Va. App. 73, 78, 367 S.E.2d 204, 206 (1988). "It is not mandatory, but directory only." *Id.* Thus, the requirement that the request for review specify all issues to which exception is taken is "[not] jurisdictional in nature, mandating that the commission disregard other errors that may be made by the deputy commissioner." *Id.* "A single award may not be segmented into component parts, some of which are final dispositions and others of which are not. An appeal of a deputy commissioner's award empowers the Industrial Commission to reexamine all of the deputy commissioner's conclusions." *Mace v. Merchants Delivery*, 221 Va. 401, 404 n.3, 270 S.E.2d 717, 719 n.3 (1980) (per curiam). *See also Cook v. City of Waynesboro Police Dep't*, 225 Va. 23, 28, 300 S.E.2d 746, 748 (1983).

We also reject Greif's argument that, even if the commission correctly construed Rule 2(A), it applied it inconsistently with past practice. Although the commission has the right to make, enforce and construe its own rules, *Brushy Ridge*, 6 Va. App. at 78 n.3, 367 S.E.2d at 206 n.3, it must do so consistently and equitably. *Seneca Falls Greenhouse & Nursery v. Layton*, 9 Va. App. 482, 484, 389 S.E.2d 184, 186 (1990). The commission did not, however, apply Rule 2(A) inconsistently or inequitably in Greif's review. The commission has consistently considered on review those issues that are germane to the factual findings and legal conclusions that were specifically appealed

to the commission. *See id.* at 484, 389 S.E.2d at 186; *Brushy Ridge*, 6 Va. App. at 77, 367 S.E.2d at 205-06; *compare Classic Floors, Inc. v. Guy*, 9 Va. App. 90, 94, 383 S.E.2d 761, 763 (1989).

Grief's reliance on *Classic Floors v. Guy* is misplaced. In *Classic Floors*, we upheld the commission's decision not to review the issue of the claimant's employment status where the primary issue before the commission was whether the claimant suffered an industrial accident and where the employer raised the issue of the claimant's employment status for the first time in its responsive brief. 9 Va. App. at 94, 383 S.E.2d at 763. We held that the commission's refusal to review the employer's issue was a reasonable interpretation of Rule 2(A) because the issue of the claimant's employment status was not "germane" to the issue of whether the claimant suffered an industrial accident. *Id.* In reaching this conclusion, we reasoned that the issue of "[the claimant's] employment status bore no logical nexus to the analysis required to determine whether an injury by accident had been proved." *Id.*

By contrast, the issue of whether Sipe suffered from a compensable ordinary disease of life was necessarily germane to her claim that she suffered from an occupational disease and to the issue of whether she suffered from a noncompensable ordinary disease of life, the precise question that Greif stated in its review application. To require the commission to reverse the deputy's holding that Sipe suffered from an occupational disease because it found her tendinitis to be an ordinary disease of life, but then force the commission to sustain the deputy commissioner's finding that Sipe had not proven a compensable ordinary disease of life, would work an absurd result. We hold that the commission did not err by considering whether Sipe proved a compensable ordinary disease of life.

## II.

■ The evidence was sufficient to support the commission's finding that Sipe's tendinitis is a compensable ordinary disease of life. An ordinary disease of life is one to which the general public is exposed outside of employment, but it may be treated as a compensable occupational disease "if it is established by clear and convincing evidence, to a reasonable degree of medical certainty, that it arose out of and in the course of employment as provided in [Code] § 65.2-400 . . . and did not result from causes outside of the employment." Code § 65.2-401. Code § 65.2-401 does not require that the claimant

prove that the occupational activity caused her tendinitis to the complete exclusion of any other contributing outside factor. *Ross Laboratories v. Barbour*, 13 Va. App. 373, 377, 412 S.E.2d 205, 208 (1991). "Reasonable degree of medical certainty" requires only that "it is at least *more probable than not* that the disease arose out of and in the course of employment." *Id.* Thus, "the mere possibility that the claimant's condition might have been influenced in some degree by another, non-work-related activity is not enough to undermine [the] finding" that it was more likely than not that the occupational activity caused the ordinary disease of life. *Id.*

Whether an ordinary disease of life is causally related to a claimant's employment and not related to outside factors is a factual finding that will not be disturbed on appeal if there is credible evidence to support it. *Id.* at 377-78, 412 S.E.2d at 208. Credible evidence supports the commission's finding that Sipe proved "to a reasonable degree of medical certainty" that her tendinitis was caused by her work-related activity. Sipe worked for twenty-four years at the same job in which she continuously and repetitively used her wrists every workday. During the time that Sipe left work, her symptoms subsided. When she returned to work, the symptoms reappeared. Although Dr. Boatwright admitted that Sipe had a family history of rheumatoid arthritis, he also stated that Sipe's condition was more likely related to her work activity. Clear and convincing medical evidence proved to a "reasonable degree of certainty" that Sipe's tendinitis was a condition caused by her work activity and not from causes outside her employment.

### III.

A disabled employee with residual marketable capacity who claims entitlement to benefits for total work incapacity must prove that he or she has made a reasonable attempt to procure work, but has been unable to market his or her remaining work capacity. *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 601, 324 S.E.2d 654, 655 (1985). What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case. *Great Atlantic & Pacific Tea Co. v. Bateman*, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). When making this determination, the commission must consider several factors, including (1) the nature and extent of the employee's disability; (2) the employee's training, age, experience and education; (3) the nature and extent of the employee's job search; (4) the employee's intent in conducting the job search; (5) the

availability of jobs in the area suitable for the employee, considering his or her disability; and (6) any other matter affecting the employee's capacity to find suitable employment. *National Linen Service v. McGuinn*, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989). Upon judicial review of the commission's finding that a claimant has made a reasonable marketing effort, the Court must view the evidence in the light most favorable to the prevailing party. *Id.* at 270, 380 S.E.2d at 33. However, where, as here, there is no conflict in the evidence as to the relevant factors, the question of sufficiency is one of law. *Id.*

We cannot say that the commission erred as a matter of law in determining that Sipe made a reasonable effort to market her remaining work capacity. Sipe registered with the Virginia Employment Commission and contacted three employers per week. She sought positions in retail sales that were suitable for her age, training, education, and experience and in light of the nature of her wrist disability. In light of the fact that Sipe had limited access to transportation, as well as the other factors that must be considered, we find the evidence sufficient to support the commission's finding that Sipe made a reasonable effort to find employment.

For these reasons, we affirm the commission's findings and award of benefits.

*Affirmed.*

Koontz, J.,* and Bray, J., concurred.

---

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.