COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


TIDEWATER PHYSICIANS MULTISPECIALTY
 GROUP AND HARTFORD CASUALTY INSURANCE
 COMPANY
                                        MEMORANDUM OPINION[*] BY
v.   Record No. 2207-99-1              JUDGE SAM W. COLEMAN III
                                           MAY 30, 2000
MAE FRANCIS HARRIS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        F. Nash Bilisoly (Kelly O. Stokes;
        Vandeventer Black LLP, on briefs), for
        appellants.

        Byron A. Adams for appellee.


    Tidewater Physicians Multispecialty Group (employer)

appeals the Workers' Compensation Commission's decision awarding

Mae Francis Harris temporary total disability benefits from

February 11, 1998, and continuing.  The employer argues that the

commission erred in finding that Harris proved by clear and

convincing evidence that she suffers from a continuing

disability causally related to her employment and erred in

finding that she has adequately marketed her residual work

capacity.  We disagree and affirm the commission's decision.

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to Harris, the party prevailing before the commission. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence proved that Harris worked as an x-ray technician intermittently for twenty years and that she had worked for Tidewater Physicians Multispecialty Group since 1990. In November 1995, the employer installed a new, larger, faster x-ray film processor which did not have a cover for the film feed. Because the new machine did not have a cover, Harris was required to remain in the processing room while the film was being developed in order not to overexpose the film. As a result, Harris had longer exposure to fumes from the chemicals used in the processor and was exposed to chemicals not used with the other film processor. The film processing room was poorly ventilated and would become very warm while the machine was operating.

Within a few months of working with the new machine, Harris began experiencing a cough, a burning sensation in her throat, and wheezing each time she was exposed to the new x-ray processing machine. Harris also suffered from earaches and respiratory problems, which she attributed to the exposure to the chemicals used in the new film processor. She testified

that she had not experienced coughing, wheezing, or allergy symptoms before working with the new film processor.

Harris was examined by Dr. Chester L. Fisher on May 6, 1996.  In an office note, Dr. Fisher stated that, after her initial visit on May 2, Harris' symptoms improved with medication and while she was absent from work.  Dr. Fisher reported that Harris suffers from irritative upper respiratory syndrome or "occupational" rhinitis and that she had a "total disability" from her work.

On May 17, 1996, Harris was examined by Dr. L.W. Moore, Jr., a pulmonary specialist, who opined that Harris' "cough, pharyngeal irritation, and hoarseness [were] most likely associated with exposure to chemicals, used in the x-ray film development."  Dr. Moore noted that Harris' symptoms would improve on weekends and while she was away from the workplace. Dr. Moore recommended that Harris not work around the film processing chemicals.

In October 1996, Harris was examined by Dr. Geoffrey W. Bacon, an otolaryngologist.  Dr. Bacon noted that Harris complained of headaches, cough, and hoarseness that she attributed to working with chemicals associated with the x-ray processing machine.  In an office note dated October 8, 1996, Dr. Bacon diagnosed Harris with allergic rhinitis and chemical sensitivities and instructed her to avoid significant chemical

exposure.  He also noted that she exhibited a wide range of moderate to severe sensitivities to pollen, animals, feathers, several molds, dust mites, and cockroaches.  She undergoes allergy immunotherapy on a regular basis which is expected to continue for her lifetime.  Dr. Bacon also recommended "strict environmental controls related to chemicals."  Dr. Bacon opined that Harris' "general allergic sensitivities should not impair her ability to work" and that "her allergic sensitivities are essentially a permanent condition."  Dr. Bacon further stated that the "primary treatment for [Harris'] chemical sensitivities would be avoidance," and he referred Harris to a pulmonologist.

Harris filed an application for benefits alleging an occupational disease with a communication date of May 6, 1996. The commission found that Harris suffered from a compensable occupational disease which was causally related to her work as an x-ray technician, specifically her exposure to the film processing chemicals.  The commission found that Harris was no longer totally disabled after May 17, 1996 and that she had failed to market her residual partial work capacity.  Thus, the commission awarded Harris temporary total disability benefits up until it was determined that she had recovered from her allergic reaction and found that she was not entitled to partial disability benefits because she failed to market her residual capacity.  That decision became final and was not appealed.  As

to future benefits for any period of disability, the commission expressly stated that "we do not decide whether claimant may be entitled to future benefits" and ruled that the deputy commissioner could not foreclose a claim for future benefits as he had attempted to do.

Harris subsequently filed a change in condition application in May 1998, claiming temporary total disability benefits beginning February 11, 1998. The commission awarded benefits, finding that Harris had adequately marketed her residual capacity, that she was temporarily totally disabled from February 11, 1998, and that the disability was causally related to the industrial disease.

ANALYSIS

A. Continuing Disability

The employer contends Harris has failed to prove that her current condition or "chemical sensitivity" is causally related to the work environment or her industrial disease. The employer argues that Harris has not proven what her "chemical sensitivities" are and how they developed. The employer points out that many of the allergens to which the claimant is sensitive and which account for her current condition are unrelated to the chemicals in the workplace. Therefore, the employer asserts that Harris has failed to show any correlation between her condition and the compensable industrial disease.

- 5 -

"In an application for review of an award on the ground of change in condition, the burden is on the party alleging such change to prove [her] allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986) (citation omitted).  We accept the commission's factual findings when they are supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

In the April 14, 1998 decision, the commission found that Harris suffered from a compensable occupational disease in that she had developed an allergic reaction to the chemicals in her workplace.  The employer did not appeal that decision.  Accordingly, any further consideration of whether Harris' original occupational disease is causally related to her employment is barred by res judicata.  See K & L Trucking Co., v. Thurber, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985) (finding that the doctrine of res judicata is applicable to decisions of deputy commissioners and the full commission).  Thus, the issue now on appeal is whether the evidence proves that Harris' current disability and allergic reactions are causally related to the industrial disease.

The commission expressly declined to decide in the former proceeding whether Harris may be entitled to future benefits based on a claim that she has become "sensitized" to exposure to

chemicals in the pre-injury work environment.  In its August 1999 decision, the commission found that Harris is partially disabled and her current disability is causally related to her pre-injury work environment.  "Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact."  <u>Island Creek Coal Co. v. Breeding</u>, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988) (citation omitted).

Here, the medical evidence established that within a few months of working with the new x-ray processing machine, Harris began experiencing respiratory problems, including coughing, wheezing, and sore throat.  Harris denied having experienced any respiratory problems or allergic reactions prior to the increase in chemical exposure caused by the new x-ray machine.  Harris testified that, after her chemical exposure, she has sensitivity to and is adversely affected by car exhaust, cigarette smoke, bleach, household cleaning products, beauty shop chemicals, and perfumes.  She has been tested for sensitivity to several environmental allergens and has been found to be allergic to dust, trees, mold, and animal dander.  Harris is currently undergoing allergy immunotherapy, which she expects to continue her entire life.  Harris' treating physician has opined that she "has a known history of chemical sensitivities" and that she "should continue to avoid any significant chemical exposures, either at any place

- 7 -

of employment or in her personal life." The commission found that the chemical sensitivity and her current sensitivity to other allergens in the environment are the same sensitivity that she developed due to the exposure to chemicals in the workplace. We find that the commission's finding that Harris' chemical sensitivity is causally related to her exposure to the x-ray chemicals is supported by credible evidence.

We further find that the commission's finding that Harris is partially disabled because she has become "sensitized" as a result of her exposure to the chemicals in her pre-injury work is supported by credible evidence.

In awarding compensation, the commission found that:

> [Harris] continues to be partially disabled as a result of her compensable occupational disease. Because of this continuing partial incapacity, she cannot perform her pre-injury work as an x-ray technician since that work would require her to be exposed to chemicals that her physicians have concluded she is sensitive to.

In concluding that Harris has not recovered from her disability and, therefore, has not obtained her pre-injury status, the commission relied on its holdings in Blevins v. Smyth County Vocational School, VWC File No. 185-57-17 (July 1, 1998), and Pruett v. J & R Electric Contractor, Inc., VWC File No. 160-30-44 (Nov. 30, 1993). In Blevins, the claimant suffered from hypersensitivity pneumonitis. The claimant's treating physician opined that the claimant was "not disabled

- 8 -

and has the capacity to do any other job in which such exposure would not be required."  The physician further stated that the claimant "has been suffering from recurrent bouts of hypersensitivity pneumonitis related to exposure to work place allergens to which he has been sensitized.  With removal of that exposure his hypersensitivity has resolved."  The commission found, based on the physician's report, that the claimant was partially disabled.

In Pruett, the claimant was an electric motor winder.  In that capacity, the claimant frequently was exposed to fumes from soldering and welding, dipping the motors into a vat of epoxy or hot varnish, and cleaning the housing.  The claimant began to experience respiratory problems and was diagnosed with industrial asthma.  His treating physician opined that his condition was caused by exposure to fumes in the workplace.  In finding that the claimant was disabled, the commission noted that the claimant's treating physicians opined that the claimant could not return to his pre-injury work because "he has become sensitized to chemicals to which he is exposed in that employment.  Therefore, he has not reached his pre-injury employment status inasmuch as he was not sensitized before he became disabled."  We find the commission's rationale in Blevins and Pruett sound and persuasive.

Here, in an office note dated May 11, 1998, Dr. Bacon stated that Harris should "continue to avoid any significant chemical exposures, either any place of employment or in her personal life." Harris testified and the record supports a finding that she continues to experience sensitivity to allergens that are present in the workplace. Harris currently undergoes immunotherapy to reduce her sensitivity to allergens. Accordingly, we find that credible evidence supports a finding that Harris is currently partially disabled in that she continues to suffer from symptoms related to the allergic chemical reaction and is unable to perform her pre-injury work.

### B.  Marketing Residual Capacity

The employer argues that the commission erred in finding that Harris reasonably marketed her residual work capacity. The employer argues that, even though Harris has sent resumes to many potential employers, she has unduly limited her job search because of her status as a full-time student and effectively removed herself from the work force.

A partially disabled employee is required to make reasonable efforts to market his or her residual wage earning capacity in order to receive continued benefits. See National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view

- 10 -

the evidence in the light most favorable to . . . the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33. "What constitutes a reasonable marketing effort depends on the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

At the hearing, the employer proffered the testimony of Barbara K. Byers, a Certified Rehabilitation Counselor, who testified that with Harris' background and training, she is employable in several entry-level positions in the medical field. Byers testified that Harris is presently qualified to work as a medical billing specialist without additional training. Byers noted that an impediment to Harris finding suitable employment, however, is her inability to work Monday, Wednesday, and Friday mornings because of her full-time class schedule.

We find that the commission did not err in determining Harris adequately marketed her residual work capacity. The commission found that Harris contacted, on average, at least two employers per week. She actively searched computer databases and newspaper classified advertisements. Although the rehabilitation counselor testified that Harris' class schedule was an obstacle in obtaining employment, Harris testified that, if she found suitable employment that conflicted with her class

schedule, she would withdraw from her classes.  We find the evidence sufficient to support the commission's finding that Harris made a reasonable effort to market her residual capacity.

Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>