COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Senior Judge Duff


NEWPORT NEWS SHIPBUILDING AND
 DRY DOCK COMPANY
                                    MEMORANDUM OPINION*
v.    Record No. 2913-00-1              PER CURIAM
                                       APRIL 17, 2001
JOEL C. WALTON


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Christopher R. Hedrick; Lexine D. Walker;
            Mason, Cowardin & Mason, P.C., on brief), for
            appellant.

            (Gregory E. Camden; Montagna, Klein & Camden,
            L.L.P., on brief), for appellee.


     Newport News Shipbuilding and Dry Dock Company contends

that the Workers' Compensation Commission erred in finding that

Joel C. Walton made a reasonable effort to market his residual

work capacity.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  See

Rule 5A:27.

     To establish entitlement to benefits, a partially disabled

employee must prove that he has made a reasonable effort to

procure suitable work but has been unable to do so.  Great Atl.

& Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98,

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

101 (1987).  "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case."  The Grief Companies v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).  In deciding whether an employee has made reasonable good faith efforts to market his remaining work capacity, the commission should consider the following factors:

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

National Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted).

Applying well established appellate principles, "we view the evidence in the light most favorable to . . . the party prevailing before the commission."  Id. at 270, 380 S.E.2d at 33.  So viewed, the evidence established that Walton, who worked for employer as a shipfitter for approximately twenty-two years, sustained an injury to his left knee on August 1, 1994 and an injury to his right knee on July 23, 1997.  Employer accepted both claims under the Longshore and Harbor Workers' Compensation Act and has not appealed the commission's awards of various periods of disability.

Dr. Thomas Stiles, Walton's treating orthopedic surgeon, performed arthroscopic surgery on Walton's left knee on August 22, 1994, September 7, 1995 and December 19, 1996.  On November 19, 1997, Dr. Stiles performed arthroscopic surgery on Walton's right knee.  Continuing to treat Walton for knee problems, Dr. Stiles recommended that Walton undergo a fourth left knee surgery and scheduled it for January 6, 1999.

In October 1999, employer indicated that it did not have work available within Walton's medical restrictions.  As a result, Walton stopped working for employer on October 7, 1999.  Employer retained Concentra Managed Care Services to assist Walton with his job search efforts.  Walton, who was forty-seven years old and a high school graduate, enrolled in Concentra's job program beginning November 1, 1999 and attended classroom training five days per week for two weeks.  Thereafter, he worked with Concentra's vocational case manager, Denise Barnhart, for an additional two weeks looking for employment.  On November 16, 1999, Dr. Stiles recommended that Walton undergo another arthroscopic surgery on his left knee.

That same day, Barnhart reported that Walton believed it was a waste of time to pursue leads provided by the job program because of his pending knee surgery.  Barnhart's November 23, 1999 report indicated that no job leads had been developed that week "pending decision from [the employer] regarding [Walton's]

- 3 -

surgery scheduled for 12-1-99."  On December 3, 1999, Hampton Inn confirmed to Barnhart that Walton had applied for a night auditor position.  Several days later, Barnhart informed Walton that his surgery had been denied and requested that he follow-up leads for driver positions with Groome Transportation and Burgess Cab.  Walton testified that he provided his DMV driving record to those prospective employers.  Burgess Cab wanted him to work on commission and provide his own vehicle for a taxi, which he could not do.  Groome Transportation never called him after he provided his driving record to them.  In Barnhart's December 14, 1999 report, she characterized Walton's participation in the job program as "fair."

At employer's request, Dr. Kerry Nevins, an orthopedic surgeon, examined Walton on December 16, 1999.  He assessed a 9% impairment of Walton's right knee and a 50% impairment of his left knee but declined to render an opinion regarding the appropriateness of additional surgery.  Ultimately, the surgery Dr. Stiles recommended was not performed because of employer's objection.  Barnhart stopped all job search activities on Walton's behalf on December 20, 1999.

Beginning January 10, 2000, Walton engaged in his own job search.  During a two-month period, he visited thirty-nine potential employers, most of which were retail business establishments.  He submitted twenty-nine job applications, and

he obtained two job interviews.  Walton testified that when the interviewers learned that he had injured his knees, they told him they did not have any jobs appropriate to his restrictions. At that time, Walton was restricted from lifting more than fifteen pounds and was not permitted to carry fifteen pounds more than seventy-five feet.  He was also restricted from using vertical or inclined ladders, and he was restricted to occasional use of foot controls.  Walton registered with the Virginia Employment Commission shortly before the March 17, 2000 hearing.

These circumstances, which are proved in the record, provide credible evidence to support the commission's finding that Walton reasonably marketed his residual work capacity.  In making its award, the commission expressly referenced the McGuinn factors and gave adequate consideration to them. Moreover, the commission could infer that it was reasonable for Walton to halt his job search while awaiting surgery in late November and December 1999.  When the employer objected to the surgery, Walton began his own job search in January 2000.

As fact finder, the commission could reasonably conclude that Walton's contact with thirty-nine employers over an approximately four-week period, resulting in two interviews, was reasonable in light of Walton's age, level of education, prior work history, and physical limitations.  Although employer

- 5 -

asserts that there are other more efficient methods which might have been utilized by Walton to find employment, the commission correctly ruled that the law "requires only a reasonable effort," not the most efficient effort.

We, therefore, affirm the commission's decision.

<u>Affirmed.</u>