COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Hodges
Argued at Chesapeake, Virginia


NORFOLK SHIPBUILDING &
 DRY DOCK CORPORATION
                                    MEMORANDUM OPINION* BY
v.    Record No. 0428-02-1            JUDGE LARRY G. ELDER
                                         OCTOBER 1, 2002
JAMES J. McCLEARY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Amanda R. Castel (Taylor & Walker, P.C., on
             briefs), for appellant.

             Chandra Wilson Stepney (Robert J. MacBeth,
             Jr.; Rutter, Walsh, Mills & Rutter, on
             brief), for appellee.


     Norfolk Shipbuilding & Dry Dock Corporation (employer)

appeals from a decision of the Workers' Compensation Commission

(the commission) awarding temporary total disability benefits to

James J. McCleary (claimant).  On appeal, employer contends the

commission erroneously accepted claimant's late-filed written

statement of September 7, 2001.  It also argues that the

commission's award of temporary total disability benefits to

claimant for the period of time he participated in vocational

rehabilitation sponsored by the Office of Workers' Compensation

Programs (OWCP) of the United States Department of Labor

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

constituted an erroneous ruling that this participation, as a matter of law, satisfied claimant's duty to market his residual work capacity under the Virginia Workers' Compensation Act (the VWCA).[1]

We hold the time of filing of the written statement that employer challenges is irrelevant in this appeal because that statement pertained only to claimant's cross-appeal to the commission, not a part of the appeal before this Court. Further, we hold credible evidence supported a finding that claimant adequately marketed his residual capacity during the disputed periods of time through May 10, 2000. Thus, we affirm the commission's award of benefits for these periods.[2]

## I.

### CLAIMANT'S LATE-FILED WRITTEN STATEMENT

Following the deputy commissioner's award of benefits for the disputed periods of time prior to May 10, 2000, and denying benefits from May 10, 2000 forward, both parties filed independent requests for review. Employer requested review of

---

[1] Although claimant originally sought to reframe the issue as whether he unreasonably refused employer's offer of vocational rehabilitation, the parties agreed at oral argument that the sole issue before us on appeal is whether claimant adequately marketed his residual capacity for all periods up to May 10, 2000, when he was partially disabled. Thus, on the merits of this appeal, we consider only the marketing issue.

[2] Claimant originally sought benefits continuing after May 10, 2000, but the deputy commissioner and commission denied this claim, and claimant does not contest that denial on appeal to this Court.

the deputy's decision awarding benefits for the period prior to May 10, 2000, and claimant requested review of the deputy's denial of benefits from May 10, 2000 forward. Employer's written statement in support of its request for review, sent by certified mail, was dated August 29, 2001, and claimant's reply to employer's written statement, also sent by certified mail, was dated September 10, 2001.

Employer does not contest the timeliness of claimant's filing of his September 10, 2001 reply to employer's written statement. Rather, he contests the timeliness of claimant's document dated September 7, 2001. The challenged document purports to be "claimant's Written Statement in regards to Employer's request for review of . . . Deputy Commissioner Wilder's April 30, 2001 Opinion . . . ." (Emphasis added). However, a review of the text of that document makes clear that it contains argument only on the subject of claimant's independent request for review of the deputy's decision and does not respond to any arguments contained in employer's written statement.

Because claimant did not appeal to this Court the commission's ruling denying benefits from May 10, 2000 forward, the issue of the timeliness of claimant's filing of his independent written statement dated September 7, 2001 is not before us on appeal. Thus, we dismiss this portion of employer's appeal.

- 3 -

## II.

## CLAIMANT'S DUTY TO MARKET HIS RESIDUAL CAPACITY

"Where an employee's disability is partial, to establish his entitlement to benefits, he must prove that he made a reasonable effort to market his residual work capacity."  Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220, 527 S.E.2d 451, 453 (2000).  In determining whether the employee has met his burden of proof, the commission should consider the following:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted).  Other matters affecting the employee's ability to find suitable employment include whether "the employer availed itself of its opportunity to assist the claimant in obtaining employment" and, if so, "whether the [claimant] cooperated" with those efforts.  Id. at 272 n.5, 380 S.E.2d at 34 n.5; see also Code § 65.2-603(A)(3), (B) (stating that employer may offer vocational rehabilitation services, independently or at direction of commission and that employee's "unjustified refusal" of such services justifies suspension of

- 4 -

benefits).  The commission also may consider "whether [the employee] is capable of being retrained."  McGuinn, 8 Va. App. at 272 n.5, 380 S.E.2d at 34 n.5.

Ultimately, "[t]he commission . . . determines which of these or other factors are more or less significant with regard to a particular case," id. at 273, 380 S.E.2d at 34-35, and "[w]hat constitutes a reasonable marketing effort depends on the facts and circumstances of each case," Greif Cos. v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).  The decision of the commission "on [this] question, if supported by credible evidence, will not be disturbed on appeal."  O'Brien, 32 Va. App. at 220-21, 527 S.E.2d at 453.

Here, employer contends the commission found, as a matter of law, that claimant's participation in the OWCP vocational rehabilitation program constituted adequate marketing of claimant's residual capacity and that this finding was erroneous.  We disagree.

First, the commission did not hold that any claimant's participation in OWCP-sponsored vocational rehabilitation satisfies that claimant's duty to market his residual capacity under the VWCA as a matter of law.  It merely affirmed the deputy's ruling that this "claimant's involvement with the vocational rehabilitation program offered by the Department of Labor under the Federal [LHWCA] met his obligations under the [VWCA] until May 10, 2000."  (Emphases added).

- 5 -

Second, credible evidence in the record supported that finding. Claimant was released to work with restrictions in April 1998. That same month, OWCP informed claimant that he was a candidate for OWCP's vocational rehabilitation services, and it referred him to Vocational Counselor George Davis. During May and June 1998, Davis performed vocational counseling and testing, reviewed information regarding claimant's medical status, and performed a labor market survey to identify available positions in the local labor market which were suitable for claimant's abilities. Although claimant had a high school education, an above average I.Q., and thirty years combined experience as an electrician for the Navy and employer, he was 50 years old and had no other transferable skills. Davis noted that "very few positions meet [claimant's] work restrictions" and that "most positions [he] is physically able to perform, such as clerical, counseling or computer, will require additional skills." Despite these limitations, Davis helped claimant prepare a resume and cover letter, target and apply for suitable jobs, and evaluate various opportunities for retraining in related fields.

Davis's efforts on claimant's behalf were hindered when claimant underwent surgery shortly after vocational rehabilitation efforts began and remained disabled for a period of time afterward. After claimant recuperated, employer laid claimant off, and Davis focused his efforts on obtaining

employment for claimant with another employer.  When claimant's condition improved significantly, he was able to return to work for employer with only limited restrictions, but his condition worsened, and he was unable to maintain that employment.

Thereafter, Davis helped claimant investigate the possibility of utilizing his electrical skills for retraining in the heating and air conditioning field.  Claimant had planned to enroll in Tidewater Community College to achieve this goal, but his treating physician concluded work in that field would be too strenuous for him.  When Davis remained unable to locate employment for claimant for several more months, they arranged for claimant to enter a computer training program in "Microsoft Engineering" which was designed to lead to sedentary employment. Claimant met the minimal requirements for that training program until the Spring of 2000, when he failed to take a test necessary to allow him to progress to the next phase of the program.  Shortly thereafter, on May 10, 2000, OWCP terminated his participation in its vocational rehabilitation program based on his non-cooperation.

Davis prepared detailed reports documenting his job search efforts on claimant's behalf, and he ceased his placement/retraining efforts on only three occasions--when claimant had surgery and was temporarily and totally disabled, when claimant returned to work for employer at his pre-injury wage, and when claimant entered the training program in

Microsoft Engineering which was expected to lead to claimant's finding appropriate employment.

Although no evidence established that claimant sought employment on his own, Davis, a trained vocational counselor approved by OWCP, sought employment on claimant's behalf. The commission was free to conclude that Davis's efforts to obtain retraining and locate employment for claimant could be attributed to claimant for purposes of evaluating claimant's marketing efforts and that, if Davis could not locate appropriate employment for claimant before claimant completed the Microsoft training program, claimant was unlikely to obtain such employment on his own.

Further, the record supported findings (1) that Davis's efforts were appropriate in light of claimant's disability, training and experience, and the local job market, cf. Va. Int'l Terminals, Inc. v. Moore, 22 Va. App. 396, 401-02, 470 S.E.2d 574, 577 (1996) (holding credible evidence supported commission's finding that job search efforts were reasonable where "claimant's list of employers . . . [was] not an extensive record for marketing efforts" but commission observed that claimant "[could] read and write at only a second or third grade level"), aff'd on other grounds, 254 Va. 46, 486 S.E.2d 528 (1997), and (2) that claimant participated in Davis's efforts in good faith during all disputed periods through May 10, 2000, when he was terminated from the OWCP program. Thus, credible

evidence supported a finding that claimant's good-faith participation in Davis's appropriate placement efforts proved adequate marketing of claimant's residual capacity.

Finally, the commission expressly found that claimant's refusal to cooperate with employer's vocational rehabilitation services prior to May 10, 2000--a component of the marketing issue--was not unjustified. McGuinn, 8 Va. App. at 272 n.5, 380 S.E.2d at 34 n.5 (noting that as part of determining whether employee marketed his residual capacity, commission should consider whether employee cooperated with employer's efforts to assist employee in obtaining employment). When employer's vocational counselor first contacted claimant in June 1998, claimant had already begun vocational testing and counseling with George Davis, an OWCP counselor. As outlined above, the evidence also supported a finding that Davis engaged in ongoing efforts to obtain retraining and locate employment suitable to claimant's skills and abilities and that claimant cooperated with Davis's efforts until shortly before claimant was terminated from the OWCP program in May 2000. Thus, the evidence supported the commission's finding that claimant's refusal to cooperate with employer's vocational counselor was not unjustified. Cf. Metro Mach. Corp. v. Sowers, 33 Va. App. 197, 208, 532 S.E.2d 341, 346-47 (2000) (holding credible evidence supported commission's conclusion that employee's refusal to cooperate with employer's vocational rehabilitation

- 9 -

was justified where employee "was actively participating with the Virginia Employment Commission's vocational rehabilitation and seeking appropriate employment").

We do not view the commission's holding as a determination that every claimant who participates in vocational rehabilitation through OWCP or any similar program satisfies his duty to market under the VWCA as a matter of law. As discussed above, "[w]hat constitutes a reasonable marketing effort depends on the facts and circumstances of each case." Sipe, 16 Va. App. at 715, 434 S.E.2d at 318. Nor do we view the commission's holding as a determination that every claimant who participates in vocational rehabilitation through OWCP or any similar program but declines vocational rehabilitation offered by his or her employer under the VWCA is justified, as a matter of law, in doing so. Rather, it is within the discretion of the commission to determine in each particular case whether "the circumstances justified the refusal." Code § 65.2-603(B); see McGuinn, 8 Va. App. at 272 n.5, 380 S.E.2d at 34 n.5.

For these reasons, we hold credible evidence supports the commission's finding that claimant "met his obligations under the [VWCA] until May 10, 2000."

### III.

We dismiss employer's appeal insofar as it claims the commission erroneously accepted claimant's submission of

September 7, 2001, and we affirm the award of benefits for the

disputed dates up to May 10, 2000.

<u>Dismissed in part,</u>
<u>and award affirmed.</u>