COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


LITE-TECH, INC. AND
  GREAT AMERICAN INSURANCE COMPANY

v.      Record No. 2256-04-1

ANTONY ERIC CHARLES                            MEMORANDUM OPINION[*] BY
                                               JUDGE WALTER S. FELTON, JR.
ANTONY ERIC CHARLES                                  MARCH 22, 2005

v.      Record No. 2319-04-1

LITE-TECH, INC. AND
  GREAT AMERICAN INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Daniel E. Lynch (John T. Cornett, Jr.; Williams & Lynch, on briefs),
            for Lite-Tech, Inc. and Great American Insurance Company.

            Alan P. Owens for Antony Eric Charles.


        Lite-Tech, Inc. and its insurer (collectively referred to as "employer") contend the Workers'

Compensation Commission ("commission") erred in determining:  (1) that Antony Eric Charles'

("claimant") carpal tunnel syndrome constituted a compensable consequence of his original

compensable injury; (2) that his change-in-condition application was not time-barred; and (3) that

claimant had proven that he had reasonably marketed his residual capacity.  On cross-appeal,

claimant contends the commission did not err in finding that his right carpal tunnel syndrome was a

compensable consequence of his compensable right wrist injury; that his change in condition was

timely filed under Code § 65.2-708(A); that even if the commission erred in finding his right carpal

            [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

tunnel syndrome was a compensable consequence, it was part of the compensable injury included in the initial compensation benefits award; and that under Code § 65.2-708(A), claimant had until September 15, 2003 to timely file a change-in-condition application. For the following reasons, we affirm.[1]

## BACKGROUND

On appeal, we view the evidence in the light most favorable to claimant, the prevailing party before the commission. Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003); Greif Cos. v. Sipe, 16 Va. App. 709, 716, 434 S.E.2d 314, 318 (1993).

On April 18, 1999, claimant, a cable splicer, was injured when he attempted to grab a heavy splicing box that fell from a cherry picker. He sprained his right shoulder and wrist and fractured the carpal bones in his right wrist as he tried to grab the falling box. Following the accident, Dr. Meade, an orthopedic surgeon, treated claimant's right shoulder injury. Dr. Krop, also an orthopedic surgeon, treated claimant's right wrist injury. Initial treatments included casting the right wrist due to the carpal bone fracture. Following treatment, claimant continued to have tenderness in his right hand and wrist. In November 1999, Dr. Krop performed a scaphoid fusion of claimant's right carpal bone. Post-operatively, claimant continued to suffer stiffness in his right wrist.

On December 8, 1999, claimant filed a claim for benefits stating that he injured his "right wrist, arm and shoulder," in an April 18, 1999 work-related accident. Employer accepted claimant's claim as compensable. Thereafter on February 1, 2001, the deputy commissioner awarded claimant disability compensation benefits for 72 weeks beginning September 15, 2000, as well as medical benefits for his compensable injuries.

---

[1] Claimant filed a cross-appeal to protect his interests in the event that employer prevailed on any of its questions presented. We do not separately address claimant's cross-appeal as our opinion affirms the commission's award in favor of claimant.

In April 2000, Dr. Krop examined claimant and found positive signs of carpal tunnel syndrome (CTS) in the injured right wrist and hand. He reported that claimant's "right carpal tunnel syndrome is consistent with the edema of the surgery that [claimant] has been through." On May 2, 2000, claimant underwent an EMG/nerve conduction study read as being "suggestive of borderline or very mild carpal tunnel syndrome." After reviewing these test results, Dr. Krop informed claimant that he might require surgery to decompress the right CTS. In a July 6, 2000 letter, Dr. Krop repeated this assessment of claimant's right wrist and hand, stating "there is a chance [claimant] will require CTS decompression surgery at some time in the future, also related to his injury." Claimant continued to complain of pain in his right wrist and hand. As a result of his injuries and CTS, he continued to be placed on restrictive work duty.

On December 12, 2002, claimant filed a change-in-condition application, seeking reinstatement of temporary total disability wage benefits based on his right CTS.

From January 6, 2003 until May 2, 2003, claimant was an inpatient at the Martinsburg, West Virginia, VA hospital. There he was treated for depression, for his right shoulder injury and for his bilateral CTS. Because he was homeless when he was admitted to the hospital, the inpatient program required claimant to work with a "treatment team" to continue his job search and job training as a condition of his hospital stay. On claimant's release from the VA hospital, Dr. Lemperg instructed him to remain "off work" through June 20, 2003, because of his bilateral CTS. In August 2003, Dr. Kline, an associate of Dr. Krop, again placed claimant on restrictive work duty. He also recommended bilateral wrist splints because of claimant's bilateral hand numbness and tingling resulting from his CTS.

On November 18, 2003, the deputy commissioner held a hearing on claimant's change-in-condition application. He found that claimant's medical records showed that he was treated for bilateral CTS, including his right CTS, and that the latter condition was a part of the

initial compensable injury incurred on April 18, 1999.  The deputy commissioner further found that because the initial compensable injury included claimant's right CTS, the two-year statute of limitations of Code § 65.2-601 did not apply.  He also found that claimant had reasonably marketed his residual work capacity.  In his March 2, 2004 opinion, the deputy commissioner stated:

> We had the opportunity to view his appearance and demeanor during the course of a lengthy evidentiary hearing.  We find him to be extremely credible and we believe that he searched for work as set out in his various exhibits.
>
> *       *       *       *       *       *       *
>
> Based upon the law and the credibility of the claimant, we find that the claimant reasonably marketed his remaining work capacity.  In fact, he made great efforts to find employment while still in the hospital and we applaud his efforts.

The deputy commissioner ordered a supplemental award of compensation benefits for claimant's temporary total disability, payable beginning September 11, 2002 and continuing until conditions justified modification.  Employer appealed the award to the full commission.

On August 31, 2004, the full commission found that, "for reasons different from those set forth by Deputy Commissioner," claimant's claim was not barred by the statute of limitations. The commission found that claimant's right CTS was a compensable consequence of his April 1999 accident.  It concluded that, pursuant to Code § 65.2-708(A), claimant timely filed his change in condition within the 24 months from the last date for which compensation was paid on the September 15, 2000 award.  The commission affirmed the deputy commissioner's award, including his finding that claimant had reasonably marketed his residual work capacity.

- 4 -

ANALYSIS

I.

On appeal, employer contends that the commission erred in finding that claimant's right CTS was a compensable consequence of his April 16, 1999 injury. We disagree.

"When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary injury." Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977). "In other words, where a causal connection between the initial compensable injury and the subsequent injury is established . . . the subsequent injury is 'treated as if it occurred in the course of and arising out of the employee's employment.'" Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991) (quoting Leonard, 218 Va. at 214, 237 S.E.2d at 100). "The simplest application of this principle is the rule that all the medical consequences and sequelae that flow from the primary injury are compensable." American Filtrona Co. v. Hanford, 16 Va. App. 159, 163, 428 S.E.2d 511, 513 (1993) (citation omitted).

When the commission's factual determinations are supported by credible evidence, they will not be disturbed on appeal. Wall St. Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000); Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Claimant's medical records reflect that he suffered a compensable injury when he attempted to grab a falling piece of equipment on April 16, 1999. Employer did not contest the medical and disability award for his right shoulder, arm, and wrist injuries resulting from this workplace accident. Dr. Krop first diagnosed claimant's right CTS in May 2002. Because of his right CTS, claimant required additional medical treatment and restrictions on his work activities. The medical

record reflects that claimant's right CTS was "consistent with the edema of the surgery" that was necessitated by the compensable injury to his right wrist. In addition, Dr. Krop reported that claimant's right CTS was "related to this injury," eliminating the possibility it had another cause.

The commission found that claimant clearly proved that his right CTS flowed from his initial compensable injuries and that claimant's right CTS was a compensable consequence of his April 16, 1999 right wrist injury.

Claimant's medical records as well as his testimony, provide credible evidence to support the commission's finding that the scaphoid fusion, performed as a result of claimant's initial right wrist injury, precipitated the CTS in claimant's right wrist. Accordingly, we will not disturb that finding on appeal.

II.

Employer also contends that because claimant failed to file his change-in-condition application within two years of the date of the initial injury, it is time-barred under Code § 65.2-601. We disagree.

"Where the subsequent injury is a new injury, the provisions of Code § [65.2-601] are applicable from the date of that new injury. When the subsequent injury is a change in condition, the provisions of Code § [65.2-708(A)] are applicable." Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 753-54, 601 S.E.2d 693, 699 (2004) (quoting Bartholow Drywall, 12 Va. App. at 797, 407 S.E.2d at 5).

> [I]f the consequent injury is a mere change in condition - some
> form of medical *sequelae* of the original injury, though not of the
> accident itself - the claim falls within the limitations period of
> Code § 65.2-708(A), which requires filing within 24 months from
> the "last day for which compensation was paid, pursuant to an
> award" by the commission.

Id. at 754, 601 S.E.2d at 699; see American Filtrona, 16 Va. App. at 163, 428 S.E.2d at 513.

- 6 -

On June 6, 2001, claimant was awarded permanent partial disability benefits for 72 weeks beginning September 15, 2000. He filed a change-in-condition application on December 12, 2002, alleging his right CTS was a compensable consequence of his initial right wrist injury. His claim was filed within 24 months from the last date for which compensation was paid on the September 15, 2000 award.

Because we conclude that the commission properly reviewed claimant's change-in-condition application pursuant to Code § 65.2-708(A) and not Code § 65.2-601, we find no error in the commission's ruling that the current claim is not time-barred.

III.

Employer also argues that the commission erred in finding that claimant had proven that he made reasonable efforts to market his residual work capacity.

A partially disabled employee is required to make reasonable efforts to market his residual earning capacity to maintain his eligibility to receive continuing compensation benefits. See National Linen Service v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989) (citation omitted). "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Sipe, 16 Va. App. at 715, 434 S.E.2d at 318. To determine reasonableness, the commission should consider

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

McGuinn, 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted). Ultimately, "[t]he commission . . . determines which of these or other factors are more or less significant with regard to a particular case." Id. at 272-73, 380 S.E.2d at 34-35.

Here, claimant worked in the fiber optics business for some twenty-three years. While hospitalized in the VA hospital, following the initial award of compensation benefits, he maintained his job search, meeting regularly with his "treatment team" to coordinate his search efforts. He used two internet employment search websites where potential employers could review his job qualifications for available positions. He testified that he had spoken with potential employers and many "headhunters." He testified that nearly 285 potential employers had viewed his resume on-line. He presented documents demonstrating that he sent resumes to potential employers from June 2002 through February 2003. He testified that he had found his last two jobs through these websites. He also underwent job training working toward a Microsoft Certified Engineering designation, and acquired software permitting him to perform computer work within his medical restrictions. He testified that he sought work outside his pre-injury field of telecommunications work, looking for employment as an information technology manager, computer programmer, and computer technician.

The commission specifically found that

> [C]laimant presented persuasive evidence that he diligently searched for alternative employment during his partial disability. He submitted paper documentation of his Internet search, contacts, and postings. The claimant also sought work with employers outside his pre-injury field of work. . . . [B]ased on the extent and intent of his job search, disability, experience, age, and other factors, this particular claimant put forth a sufficient effort to market his residual work capacity.

Credible evidence in the record supports the commission's finding that claimant reasonably marketed his residual work capacity. See Sipe, 16 Va. App. at 715, 434 S.E.2d at 318.

For the foregoing reasons, we affirm the award of the commission, finding that claimant's right wrist CTS was a compensable consequence of his initial compensable injury; that his

change-in-condition application was timely filed; and that he reasonably marketed his residual work capacity.

Affirmed.