COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Richmond, Virginia


MARA J. MARTIN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1606-06-2                      JUDGE SAM W. COLEMAN III
                                                         MARCH 13, 2007
UNIVERSITY OF VIRGINIA MEDICAL CENTER


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Thomas H. Roberts (Thomas H. Roberts & Associates, P.C., on
          brief), for appellant.

          Donald G. Powers, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General; Maureen Riley Matsen, Deputy
          Attorney General; Peter R. Messitt, Senior Assistant Attorney
          General, on brief), for appellee.


       Mara J. Martin (claimant) appeals a decision of the Workers' Compensation Commission

denying her change-in-condition claim seeking temporary total disability benefits commencing

March 15, 2005.  Claimant contends the commission erred in (1) finding that she failed to prove

she adequately marketed her residual work capacity as of March 15, 2005; and (2) failing to

address or consider Exhibits 3 and 4, which were attached to her written statement, as

after-discovered evidence, pursuant to Code § 65.2-705 and Rule 3.3.  Because we hold

claimant's evidence proved as a matter of law that she adequately marketed her residual work

capacity, we reverse the commission's decision and remand for entry of an award consistent with

this opinion.  In light of our ruling on the marketing issue, we need not address the issue raised

by claimant concerning after-discovered evidence.

---

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In order to establish entitlement to benefits, a partially disabled employee must prove she has made a reasonable effort to procure suitable work but has been unable to do so. See Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987). "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." The Greif Companies v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

> "In determining whether a claimant has made a reasonable effort to market [her] remaining work capacity, we view the evidence in the light most favorable to [employer], as [it] was the prevailing party before the commission." Where, as here, there is no conflict in the evidence, "the question of the sufficiency of the evidence is one of law."

CLC Constr., Inc. v. Lopez, 20 Va. App. 258, 267, 456 S.E.2d 155, 159 (1995) (quoting National Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989)). The factors the commission should consider in deciding whether a claimant has made reasonable good faith efforts to market his or her remaining capacity are:

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

McGuinn, 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted).

The facts are undisputed. On March 15, 2000, claimant, a thirty-four-year-old nurse, injured her back while working for the University of Virginia Medical Center (employer), at an average weekly wage of $701.75. A deputy commissioner entered an award for various periods ending with temporary total disability (TTD) benefits from March 2, 2001 and continuing. The full commission affirmed that award. In October 2001, claimant began working a light duty job as a public relations liaison for the Hudson Institute, which later changed its name to the Sagamore Institute. Claimant's job, which she procured herself, involved dealing with

government offices and nonprofits to mobilize more effective care for the poor, and required some travel.

By Consent Order entered on April 1, 2004, claimant's TTD award was terminated effective October 8, 2003, and an award for temporary partial disability (TPD) benefits was entered based on a post-injury average weekly wage of $480.65.

On January 27, 2005, employer filed an application alleging an increase in claimant's earnings and seeking a credit for overpayment. Several months later, claimant requested an award of TTD benefits due to elimination of her job.[1] Claimant had received a letter notifying her that as of March 15, 2005, her position at the Sagamore Institute was eliminated. As of that date, she remained unable to perform her pre-injury job as a floor nurse due to her compensable back injury. She was still under restrictions on lifting, bending, and twisting. In addition, she experiences pain flare-ups and has developed a limp and hip problems due to her back injury.

At the June 29, 2005 hearing, claimant testified that she had made twenty-eight contacts with prospective employers in the three months since her job was eliminated on March 15, 2005. In her initial efforts to market her residual work capacity, claimant used her contacts at the Sagamore Institute to find employment at a similar organization. Between March 15, 2005 and June 22, 2005, claimant traveled to Colorado, Washington, and Israel seeking employment similar to her work with the Sagamore Institute. In Colorado, she met with the executive director of Leadership Catalyst. At the time of the hearing, she was still in contact with Leadership Catalyst exploring the possibility of employment. In Seattle, Washington, she had an interview at the Mars Hill Graduate School, which has a program for the recovery of exploited children and human trafficking. Claimant testified that her work with the Sagamore Institute involved

---

[1] Both applications were heard together. The commission awarded employer a credit for overpayment of compensation. Neither party has appealed that issue to this Court.

helping under-served populations, including individuals involved in human trafficking. In Jerusalem, Israel, claimant interviewed with the International Christian Embassy, and at the time of the hearing, was planning to contact that organization's Washington, D.C. office.

After these efforts to obtain employment similar to her work with the Sagamore Institute, claimant sent approximately twenty-five resumes to local physicians, starting June 22, 2005 and up to the time of the hearing on June 29, 2005. Some of those inquiries were in response to advertisements. In addition, claimant spoke to some of those prospective employers. Claimant testified that, although she had registered with the Virginia Employment Commission (VEC) after her injury in 2000, she did not register with the VEC after her position was eliminated on March 15, 2005. She explained that, based on her earlier experience, she believed registering with the VEC in 2005 would not be productive in helping her to find a job. She also testified she was pursuing her other contacts and interviews in distant locales.

Based upon this record, and after considering the factors enunciated in McGuinn, a majority of the commission found as follows:

> We agree with the Deputy Commissioner that the claimant did not adequately market her residual capacity. She had made only 28 contacts, most of which were cold contacts, meaning she did not know whether there were available jobs which were within her restrictions. Most telling is the fact that she commenced her full-blown marketing effort only one week before the hearing. There is no evidence that she looked in the want ads, and she did not register with the VEC. She is well-educated and should have put forth a better effort.

Commissioner Diamond dissented, concluding that claimant made reasonable and good faith efforts to find employment after her job was eliminated on March 15, 2005, and reasoning as follows:

> Given her disability and her unique experience, I find it reasonable that the claimant initially focused her job search on obtaining employment at an organization similar to the Sagamore Institute. To that end, the claimant utilized her contacts at

Sagamore and obtained interviews with three organizations with similar programs. She spent time traveling to Colorado, Seattle, and Israel for interviews and developing and maintaining job contacts. After approximately three months, the claimant broadened her search efforts to include doctor's offices. She sent resumes and spoke with some of the potential employers. Given her nursing background, it was reasonable to expand her search to medical practices.

I further find that the claimant acted in good faith. The claimant's work history reveals that she successfully remained in the same position from October 2001 until the elimination of her job in March 2005. Her networking after the elimination of her job reflects her desire to continue working in a similar field and certainly her actions evinced the intent to find employment. Moreover, after a reasonable amount of time she expanded her job search to include doctor's offices, which also fit her background and experience. I am not dissuaded from finding the claimant's efforts reasonable just because she did not register with the VEC. The claimant's uncontradicted testimony is that she tried utilizing the VEC's job search assistance after her injury but found it unproductive. Registration with the VEC is not an absolute requirement but only one factor to be considered.

Applying the guidelines enumerated in McGuinn to the undisputed facts and circumstances of this case, we hold that as a matter of law claimant's evidence sustained her burden of proof.

Claimant obtained selective employment on her own after her injury and worked in that job for approximately three and one-half years. When her job was eliminated on March 15, 2005, claimant, who was still under medical restrictions and unable to perform her pre-injury work, immediately began trying to find work similar to her selective employment as a public relations liaison in a fairly specialized field. She made three contacts, traveling to Colorado, Washington, and Israel in order to interview for those jobs. When that initial job search did not result in employment, claimant sent out twenty-five resumes to local doctors seeking a job. She spoke to some of those prospective employers. The facts showed, and the deputy commissioner so found, that claimant was sincere in her desire to find employment. The commission did not

find otherwise but, rather, found that she "should have put forth a better effort." During that three-month period, however, claimant initially searched for charitable work similar to that which she performed for the Sagamore Institute requiring her to travel long distances, and then broadened her search to include twenty-five local doctors. We hold as a matter of law that her efforts to market her residual work capacity during the three-month period from March 15, 2005 to the time of the hearing on June 29, 2005, were reasonable and made in good faith.

With respect to the significance of claimant's failure to register with the VEC after her position was eliminated in March 2005, we note that

> National Linen recognized that there were a number of ways in which an employee could prove that "reasonable effort" had been made, and that registering with the VEC was an important one. The opinion listed some guidelines but did not hold that registration with the VEC was essential to continued benefits, nor do we. We concur with the view that each claim must be judged on a case-by-case basis.

Herbert Bros., Inc. v. Jenkins, 14 Va. App. 715, 718, 419 S.E.2d 283, 285 (1992). Moreover, in this case, claimant provided an uncontradicted and reasonable explanation for why she did not register with the VEC after March 15, 2005. Significantly, the deputy commissioner, who had an opportunity to observe the claimant and weigh her testimony, found that she was sincere in her desire to obtain employment.

Based on the foregoing reasons, we reverse the commission's decision finding that claimant failed to adequately market her residual work capacity beginning March 15, 2005, and remand for an award consistent with this opinion.

Reversed and remanded.